## Agnew *versus* Johnson.

One of two joint owners of personal property may maintain trover against a stranger, to whom the other owner had transferred the joint property to other uses than those for which it was held by the joint owners, and inconsistent therewith, the stranger claiming the exclusive possession and ownership: and, in such action, the plaintiff may recover the value of his interest in the property converted.

ERROR to the District Court, *Philadelphia.*

This was an action of trover by Samuel Agnew *v.* Lawrence Johnson, to recover damages for the conversion of the stereotype plates of Goodrich's Pictorial Histories of the United States, England, France, and Greece. The plea was *non cul.*, &c.

The plaintiff, by an agreement with Goodrich, the author, dated February 19, 1842, purchased the exclusive right of publishing, during the existence of the copyright, histories of the above countries, and also of Rome. Agnew was to cause them to be stereotyped as soon as they were written, to keep the market supplied, and to pay Goodrich a per-centage on sales. Goodrich was to prepare the histories as speedily as convenient.

Agnew soon after entered into an agreement with Sorin & Ball, booksellers in Philadelphia, by which he sold them one-half his interest. They were to publish at their own expense, pay Goodrich his per-centage, pay one-half the cost of the plates, bear all losses, &c., &c. The profits were to be equally divided. They were to keep the market supplied, &c., &c. Then followed this clause:—" *The said Sorin & Ball shall not have the right to dispose of their interest in the said books, without the written consent of the said Samuel Agnew; and in case of the death of either of*

2 I

[Agnew v. Johnson.]

*said firm, or of the dissolution of their copartnership, the said Samuel Agnew shall have the right to claim the plates and take the same as his own property, upon refunding the amount of money which shall have been paid thereon by the said Sorin & Ball, with ten per cent. added thereto, and payment therefor may be made by satisfactory notes at sixty and ninety days, and four months, for equal portions thereof.*" This agreement was dated 23d July, 1844. By a supplementary agreement of October 12, 1846, it was provided, " to afford the said Samuel Agnew a proper indemnity in his transactions with the said second parties, that the stereotype plates, jointly owned by the parties hereto under and in accordance with their agreement of the twenty-third day of July, eighteen hundred and forty-four, for the publication of Goodrich's Pictorial Histories, shall be and hereby are pledged unto the said Samuel, as security that the said second parties shall and will, at all times hereafter, pay the copyright money coming and to become due to the said Goodrich, according to the said Samuel's contract with him; *and in case of any event by which the said Sorin & Ball shall be unable to carry on their part of their engagement with the said Samuel, and whereby he shall become entitled to purchase said plates, the price thereof shall also be pledged for any arrears that may be owing for the copyright money, which may be due from the said Sorin & Ball according to their said agreement with the said Samuel Agnew, or which may thereafter become due for the books then printed.*"

Under these agreements Goodrich wrote and copyrighted, Agnew caused to be stereotyped, and Sorin & Ball published the four histories first mentioned. Sorin & Ball paid half the price of the plates.

In the fall of 1847, Sorin & Ball failed in their business. Judgment was obtained against them; and in December, 1847, executions were issued, their whole stock in trade sold out, their business as booksellers broken up, and they soon after ceased to do business as a firm, and both the partners left this city.

On the 10th day of June, 1848, one of the partners of the firm of Sorin & Ball, for both, signed this paper :—" We hereby, from this date, relinquish to Samuel Agnew our right to publish the school histories, known as the Pictorial History of France, Pictorial History of United States, Pictorial History of England, Pictorial History of Greece, and Pictorial History of Rome."

On the 2d day of August, 1848, one, for both, caused notice of dissolution to be published.

At this time the firm of Sorin & Ball was largely indebted, as well to Goodrich as to Mr. Agnew.

On the 3d of August, 1848, Agnew demanded the plates of Sorin & Ball, at the same time exhibiting his own notes for the half cost of the plates, with ten per cent. added, which were to be

[Agnew *v.* Johnson.] ·

held by him as a pledge, according to agreement. These notes were not objected to, and Sorin swears they were satisfactory.

To this demand Mr. Sorin, for the firm, replied that they had no control over the plates, and that if Agnew wanted them he must negotiate with Mr. Johnson, the defendant.

Agnew then commenced a correspondence with defendant, in which he demanded, and defendant refused the plates. Agnew then replevied them, defendant gave a property bond. The replevin was tried, and Agnew *nonsuited.* This action was then brought.

Johnson claimed under an alleged pledge to him of the plates by Sorin & Ball for money loaned to that firm. On the part of the plaintiff, it was alleged that there was no pledge, but if there were that Agnew could not be affected by it, because there was proof in the case that *defendant* knew of Agnew's interest, and of his agreement with Sorin & Ball, which expressly forbade any assignment or transfer of the plates or any interest therein.

It was further alleged that even if Sorin & Ball could have pledged their own interest, they could not pledge Agnew's. Yet the defendant held all the plates and refused to recognise any interest in Agnew, who claimed to own at least *the undivided half* of the plates, for which it was alleged he could recover if he failed to recover for the whole.

On the trial, there was given in evidence a transfer by Sorin & Ball, dated 23d January, 1846, *to L. Johnson,* of certain stereotype plates which were enumerated in the instrument, but the pictorial histories by Goodrich were not mentioned. The plates and engravings belonging to the works were to be held by Johnson until the consideration money of $2000 was paid to him, and until any notes of Sorin & Ball, which Johnson may from time to time hold, may be fully paid.

L. Johnson subsequently addressed to Sorin & Ball a letter, as follows :—

*Philadelphia, December* 21, 1847.

Messrs. Sorin & Ball :—

On looking over the paper you gave me, on 23d January last, containing a list of the stereotype plates you then lodged with me as collateral security for the payment of your obligations to me, I find that the thirteen volumes of Chambers's Educational Course are not there enumerated, owing, probably, to the fact that they were not at that time all stereotyped. The plates have always been in my possession, and I have no doubt but you intended they should be held in the same manner as those enumerated in the paper above alluded to, under date of January 23, 1846. Please state whether that is not the case, and oblige

L. JOHNSON.

[Agnew *v.* Johnson.]

To this was replied as follows:—

*Philadelphia, December* 21, 1847.

Messrs. Johnson & Co.

Gents.:—Yours of this date is at hand, and we hasten to reply. It was our intention to have placed in your hands all the plates in Chambers's Educational Course, and also our interest in the pictorial histories, by S. G. Goodrich, published by our house, as collateral for money loaned us, &c. This will place them in the same position as the plates referred to in the instrument of Jan. 23, 1846, referred to in your note, &c.

(Signed),                          Sorin & Ball.

The court below nonsuited the plaintiff.

A variety of assignments of error were made; some of which were:—Because upon the evidence the plaintiff was entitled to recover, there being evidence sufficient to go to the jury in support of the title of plaintiff: Because, upon the evidence, the jury might have found that the *defendant* had no right to the possession of the plates: Because the plaintiff was entitled to recover at least one-half the plates: Because a specific pledge of the plates had been made by Sorin & Ball to plaintiff, before any pledge to the defendant, and of this pledge to plaintiff the defendant knew before he acquired any right or equity, if he ever had any: Because there was proof of conversion; and because the court took away all questions of fact from the jury.

The case was argued by *E. S. Miller*, for plaintiff in error.—It was contended, *inter alia:* 1. That the sale to Sorin & Ball being a conditional sale, Johnson could take no other or better title than they had.

2. But if the law were otherwise, and a creditor of or purchaser from Sorin & Ball, in possession, would have been protected, yet Johnson, being a mere *bailee* or *pawnee*, takes subject to all rights and equities of Agnew: Petrie *v.* Clark, 11 *Ser. & R.* 377.

3. But Johnson, admitting his allegations to be true, was not only a mere *bailee*, but he was a bailee with notice of the precise nature of Agnew's right. Sorin & Ball both admit this notice.

4. But we deny here any pledge or bailment. But if there had been a pledge at first, there was no proof of the subsistence of the debt to secure which the pledge was made.

On any one of these four grounds, Johnson is to be considered as standing in the shoes of Sorin & Ball, and having made out a case against the latter, this action can be maintained against the former.

In this case, if the jury find that there was really no pledge, then, as against Agnew, Johnson is a wrong-doer, and the former

[Agnew *v.* Johnson.]

may for himself and his tenant in common sustain this action. One tenant in common may sue for both: King *v.* Bullock, 9 *Dana* 41; McCreary *v.* Ross, 7 *Watts* 484.

But even if he cannot, there is no plea in abatement here.

Agnew is entitled to the possession except against his co-tenant, and the fraud of his co-tenant cannot deprive him of the right.

Generally, one tenant in common cannot bring trover against his co-tenant. But where the co-tenant is destroying the common property, trover will lie: White *v.* Osborn, 21 *Wend.* 72; Fennings *v.* Grenville, 1 *Taunt.* 245; Lowe *v.* Miller, 3 *Gratt.* 205.

Here the plates were pledged, and not in use.

*Waln,* for the defendant in error.—The agreements of 23d July, 1844, and the supplemental agreement of 12th October, 1846, were between the plaintiff, Agnew, and his publishers. The defendant was no party to them. Under these agreements, Agnew sold absolutely one-half, and parted with the possession and control *of the whole,* to his publishers, Sorin & Ball, and retained only the right to repurchase the plates.

The agreement of 1844 provides that in certain events, "said Agnew shall have the right to *claim* the plates, and take the same as his own property." The supplemental agreement of October, 1846, provides, that in case of the happening of certain events, "whereby said Samuel shall become entitled to purchase said plates, the price thereof shall be pledged." A purchase by plaintiff of property in Sorin & Ball, can only have been intended; and if so, negatives any property in the plaintiff *as to their share.* At the time of the conversion, there existed in the plaintiff a future, uncertain, contingent right, which, before the happening of the contingency, if it did happen, which was denied, was divested by Sorin & Ball parting with the plates to Johnson, for value and without notice.

Under such facts, plaintiff cannot maintain trover. The declaration is for the *whole* of the plates; he had not the complete property in them, nor the right to the immediate possession of the whole.

One tenant in common cannot maintain trover against his co-tenant: 1 *Ch. Pl.* 91; 5 *Barr* 211; 1 *Term Rep.* 658; 8 *Id.* 147.

The plates were in active use.

The opinion of the court was delivered February 16, by

LEWIS, J.—The assignment of 23d January, 1846, from Sorin & Ball to Lawrence Johnson, does not include the stereotype plates in controversy; and Mr. Johnson, in his letter of 21st December, 1847, after nearly two years' time for correcting any errors in that assignment, and when his interest was stimulated by the approaching insolvency of Sorin & Ball, does not pretend that *these*

plates were intended to have been included in that assignment, although he makes claim to *other* plates which he says had been omitted. The letter of Sorin & Ball, of the same date with Mr. Johnson's letter, acknowledges the claim made by Mr. Johnson, and volunteers the statement that it was their intention to have included the plates in dispute. This letter was written after the agreement with the plaintiff of the 12th October, 1846. There is no evidence of any consideration for it, as an assignment, and it does not place Mr. Johnson upon the footing of a purchaser for value without notice. As the case stood before the court below, the merits of Johnson's title did not rise higher than the rights of Sorin & Ball. As against that firm, the plaintiff, under the articles of 23d July, 1844, and 12th October, 1846, in connection with the paper of 10th June, 1848, had an interest as part owner, unconditionally, and was entitled to the remaining interest in the plates, upon the performance of the conditions provided in the agreements. If Sorin & Ball were indebted for copyright money, it was a fair compliance with the agreement to place the notes in the hands of some disinterested and responsible person, to be delivered to Sorin & Ball when that debt was satisfied.

The reason why one joint tenant or tenant in common cannot maintain trover against his companion, is, that both are equally entitled to possession, and the possession of one is the possession of both, and is in accordance with the right of both. But where one *misuses* the joint property by appropriating it to uses for which it was not designed, and refuses to apply it to the purposes for which it was held by both, or if one delivers the property wrongfully to a stranger, for purposes inconsistent with the uses for which it was designed, and such stranger denies the title of the other, and claims the exclusive possession and ownership, the reason of the rule ceases, and trover may be maintained.

One of two joint tenants or tenants in common, may bring trover against a stranger, and recover the value of his share, where the non-joinder of his companion is not pleaded in abatement: 2 *Saun. Pl. & Ev.* 1164.

As the evidence stood in the court below, the plaintiff there ought to have been permitted to go to the jury. There was evidence on which the jury might properly have found in his favor.

Judgment reversed and *venire de novo* awarded.