## Sigler v. Kingston National Bank

Before Aponick, Flannery and Lewis, JJ.

*Mose H. Salsburg* and *Henry Thalenfeld*, for plaintiff.

*Bedford, Waller, Darling & Mitchell,* for defendant.

FLANNERY, J., August 11, 1952.—Plaintiff and one Leo E. Gaj arranged to embark in a business known as the Cable Vision Co. and in furtherance of such arrangements plaintiff deposited $6,000 in defendant bank in the name of Cable Vision Co. with the signatures of both parties required on checks drawn against the account.

On June 25, 1951, and on July 16, 1951, plaintiff and Leo E. Gaj drew two checks in the amounts of $2,000 and $1,800 respectively, payable to the order of R. G. Genzlinger, Inc. On these checks Gaj forged endorsements and fraudulently appropriated the proceeds to his own use. Plaintiff thereupon initiated criminal proceedings against Gaj and sued the bank for this amount as moneys deposited by him, plaintiff, which he was entitled to have and receive.

These facts are admitted by defendant bank in its answer but by way of new matter it alleges that Cable Vision Co. was a partnership and it avers that it is responsible solely to the partnership and not to plaintiff as an individual.

In reply to this plaintiff denied there was a partnership and averred that the whole arrangement was a scheme on the part of Gaj to defraud him; a purpose which defendant bank unwittingly served when it paid out on forged endorsements the moneys deposited by him.

Both sides moved for judgment on the pleadings.

While not decisive, it may be pertinent to observe that the alleged partner, Gaj, was arrested, tried and convicted of forgery, embezzlement and fraudulent conversion and such was freely acknowledged when argument was heard before the court.

We are satisfied that defendant's motion must be denied. While defendant in its new matter sets forth, as an exhibit, a paper which purports to be a partner-

ship agreement, plaintiff denies this in effect and avers that the arrangement was part of a fraudulent scheme designed by Gaj to defraud him. For the purpose of disposing of defendant's motion we must accept as true plaintiff's averments of fact: 2 Anderson Pa. Civil Practice 545; Cary v. Lower Merion School District et al., 362 Pa. 310. We have then, a situation wherein defendant seeks to defeat plaintiff's claim to recover his own moneys by availing himself of Gaj's fraud which defendant bank by its own failure unwittingly assisted to temporary success. We know of no authority to support this, none has been suggested and if any exists we must respectfully decline to be governed by it.

Defendant would have us make the alleged partner Gaj a party to litigation to recover money in which, according to plaintiff's averments, he had neither right, title nor interest. To analyze the proposition is to demonstrate its weakness.

When we consider plaintiff's motion for judgment we must regard the facts from defendant's point of view and we will assume, as it avers, that there was a partnership.

The legal question then, which seems to divide the litigants, is whether or not a partner—and we will assume without deciding that Gaj, the culprit, and Sigler, plaintiff, were partners—may maintain an action to recover property *belonging to him* but which was in the partnership name.

Plaintiff's motion for judgment rests flatly on the contention that a defrauded partner may alone proceed to recover from his partner, or from a third party, converted property which constituted his contribution to and interest in the partnership.

The subject is treated in 13 Standard Pa. Practice 86, §4, wherein it is stated:

"The general rule is that one partner may not maintain an action in conversion against another partner

for firm property in the absence of an express agreement. But a stranger who wrongfully receives property of the partnership from one of the partners may be sued in trover by the other partner for the return of such property."

When we refer to McNair v. Wilcox, 121 Pa. 437, cited as authority for this pronouncement, we find a suit in which one partner defrauded a copartner by selling the entire business to a third party. The victimized partner sued the third party for conversion. The Supreme Court reversed the lower court and held that such an action could be maintained. The court declared at page 442:

"It is well settled that where one joint owner of personal property sells or converts it to his own use the other may sue in trover for its value: Agnew v. Johnson, 17 Pa. 373, 378. As stated in that case, the reason why one partner cannot, as a general rule, maintain trover against the other, is that both are equally entitled to possession, and the possession of the one is the possession of both; but, if one deliver the property wrongfully to a stranger, for purposes inconsistent with the uses for which it was designed, and such stranger denies the title of the other and claims the exclusive possession and ownership, the reason of the rule ceases and trover may be maintained. . . ."

The case of Stitt v. Felton, 136 Pa. Superior Ct. 338, is a later case strongly on point. Indeed it goes beyond the facts in the case at bar. There, plaintiff and defendant's son purchased a funeral car as joint owners. Defendant took title to the car in his name and used it in his own business. Plaintiff sued to recover his interest in the car and his share of the money received for its use. The lower court held that as the property was jointly owned, plaintiff could not maintain the action alone but had to join defendant's

son as a plaintiff. On appeal, this ruling was reversed, the Superior Court holding that because of the conversion one joint owner could maintain an action for his interest in the car and his share of the money received for its use.

The court conceded the validity of the principle that joint owners must sue jointly. But where one of the owners aids or participates in a conversion, the rule loses its validity and the wronged party may sue to recover his interest. The court, at page 343, quoted from Agnew v. Johnson, 17 Pa. 373, 378:

" 'The reason why one joint tenant or tenant in common cannot maintain trover against his companion, is, that both are equally entitled to possession, and the possession of one is the possession of both, and is in accordance with the right of both. But where one *misuses* the joint property by appropriating it to uses for which it was not designed, and refuses to apply it to the purposes for which it was held by both, or if one delivers the property wrongfully to a stranger, for purposes inconsistent with the uses for which it was designed, and such stranger denies title of the other, and claims the exclusive possession and ownership, the reason of the rule ceases, and trover may be maintained.' "

It must be borne in mind that under the pleadings here defendant admits the funds were the funds of plaintiff and it likewise admits that the so-called partner Gaj behind the facade of a fraudulent partnership and for the dishonest purpose of getting access to the funds, arranged this deposit. And its counsel admits before the court at argument that the delinquent partner was arrested and convicted for so doing. Can defendant in law or conscience be heard to protest piously that the suit must be dismissed because the convicted criminal did not join as party plaintiff, a device by which he would have the assistance of the courts to

get control of plaintiff's funds to accomplish his criminal purpose? Defendant bank cannot be heard to say that the deposit was part of a fraudulent scheme and yet must be respected as something sacrosanct.

Defendant argues the general rule.

"It has been uniformly held in Pennsylvania from the earliest times to the present, that, where a debt is due a partnership, suit cannot be maintained therein by one partner alone."

It cites cases to support that well-known principle. They are unnecessary. The principle is fundamental. But like all general rules it has its exceptions and this is one of them. Here there is grave doubt that there ever was a partnership and if so defendant admits— by its motion on the pleadings—that it was simply a fraudulent scheme. While over and above all other considerations the money is admittedly the money of plaintiff.

Plaintiff's counsel has cited text writers to support the view we take that the action can be maintained. Rowley, Modern Law of Partnership, vol. 2, page 1103, sec. 799, says:

"Actions Generally . . . Plaintiffs . . . Wrong Doing Partner . . . An exception has also been made by some courts, where the partner whose non-joinder is in question, has been guilty of an act in fraud of his partners, which fraudulent act is in controversy in the suit. This would virtually be seeking to repudiate his own act, if he should appear as plaintiff . . . And, there are decisions to the effect that, where one partner fraudulently sells all the property of the firm to a third party, the defrauded partner may sue the third party for reimbursement without making his wrongdoing partner a party to the suit."

He has cited cases in other jurisdictions which, if not directly on point, are analogous and indicate the way: Doll v. Hennessy Mercantile Co., 33 Mont. 80, 81,

Pac. 625; Mannaberg v. Herbst, 45 N. Y. S. 2d 197, affirmed, 47 N. Y. S. 2d 100; Ellis et al. v. Navarro et al., 61 Cal. App. 2d 755, 143 P. 2d 735; Fuller v. Percival, 126 Mass. 381; Calkins et al. v. Smith, 48 N. Y. 614.

We are satisfied from all the authorities that plaintiff may maintain the action in his own name, and without including the delinquent associate, partner or not. To hold otherwise would be to aid the delinquent in his fraud, to assist him in his nefarious purpose.

There remains one last question. Defendant contends that since the relationship between a bank and its depositor is one of debtor and creditor, it holds the fund for both and is liable to both. Again we are confronted with a general rule which we must recognize but again we decline to agree that the instant case falls within the general rule.

It is conceded in the pleadings that the money in question was supplied by plaintiff. It is conceded in the pleadings that the codepositor has no interest in the fund. He maneuvered the joint deposit in fraud and then sought to obtain it for himself by the criminal means of forged endorsements. How can defendant bank be heard to say that this man is a creditor? We have no hesitancy in rejecting such a contention.

And we are fortified in our conclusion by the policy of the law. The Uniform Partnership Act of March 26, 1915, P. L. 18, sec. 39, 59 PS §101 provides:

"Rights after dissolution for fraud or misrepresentation.

"Where a partnership contract is rescinded on the ground of the fraud or misrepresentation of one of the parties thereto, the party entitled to rescind is, without prejudice to any other right, entitled,

"(a) To a lien on, or right or retention of, the surplus of the partnership property, after satisfying the partnership liabilities to third persons, for any sum

of money paid by him for the purchase of an interest in the partnership and for any capital or advances contributed by him, and. . . ."

It may be noted in passing that our discussion assumes the $3,800, the amount in suit, to be still in the disputed account at defendant bank although it was paid out sometime in July 1951, as stated. We have followed this course for the obvious reason that the endorsements on which it was paid out were admittedly forged and under the Negotiable Instruments Act of May 16, 1901, P. L. 194, sec. 23, 56 PS, §28, such forged endorsements are "wholly inoperative."

Under all the circumstances defendant's motion for judgment will be denied; plaintiff's motion will be granted.

Wherefore, judgment is directed to be entered for plaintiff in the sum of $3,800, with interest, as prayed for.