[S. F. No. 5528.   In Bank.—August 20, 1912.]

THE EDWARD BARRON ESTATE COMPANY (a Corporation), Appellant, v. THE WOODRUFF COMPANY (a Corporation), and S. H. WOODRUFF, Respondents.

FALSE REPRESENTATIONS—DECEIT—RESULTING DETRIMENT NECESSARY TO CAUSE OF ACTION—EXECUTORY CONTRACT.—A plaintiff has no cause of action for fraud or deceit, no matter what their nature, unless detriment has been caused thereby. Therefore, if one party by fraud has been induced to enter into a contract executory as to both parties and nothing whatsoever is done under that contract, he has ordinarily suffered no injury therefrom.

ID.—PERFORMANCE OF EXECUTORY CONTRACT INDUCED BY DECEIT—DECEIT NOT MERGED IN CONTRACT.—On the other hand, it may not be said that the deceit which has induced the making of an executory contract is merged and ends in the contract itself. If the deceit does not end in the making of the contract, but still further influences a party to the contract in his conduct under it, it is a deceit of a continuous nature, of which the injured party may justly complain.

ID.—MERE EXPRESSION OF OPINION—GENERAL RULE.—As a general rule, an action for deceit cannot be founded upon the mere expression of an opinion, but the qualifications and modifications of such rule are numerous and as important as the rule itself.

ID.—EXPRESSION OF DISHONEST OPINION—ACTION FOR DECEIT WILL LIE.—As the expression of an opinion, if honestly made, is an expression of what the speaker believes to be a fact, it follows that by the expression of a dishonest opinion to one entitled' to rely upon it, deceit is practiced, injury may be worked and an action will lie.

ID.—OPINION WHEN AFFIRMATION OF FACT.—Wherever a party states a matter which might otherwise be only an opinion and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction so that the other party may reasonably treat it as a fact and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within

CLXIII Cal.—36

the meaning of the general rule and may be a fraudulent misrepresentation.

Id.—ACTION FOR DECEIT IN INDUCING BUILDING CONTRACT—PLEADING—WANT OF ARCHITECTURAL SKILL—MISSTATEMENTS AS TO COST OF BUILDING—PREPARATION OF PLANS AND ESTIMATES OF COST.—In an action to recover damages for fraud and deceit, a complaint which avers that the plaintiff was induced to enter into a contract to employ the defendant to erect for it a building for a specified percentage of the moneys to be expended by it in its construction, by reason of his false and fraudulent misrepresentations (1), that he had great architectural and structural skill, when in truth and in fact he possessed none; (2), the positive assertion of the fact, or as an expression of opinion, that the maximum cost of the building such as plaintiff desired to erect, and the erection of which actually cost seven hundred thousand dollars, would not exceed three hundred thousand dollars; (3), that if plaintiff would sign the contract the defendant would, without delay prepare full and complete plans and specifications of the kind provided for in the contract, and would forthwith make an actual detailed estimate of the cost such estimate "to be accurate to the last nail thereof," and (4), that if such estimate exceeded three hundred thousand dollars, the defendant, by the exercise of his knowledge and skill, could and would change and modify the plans and specifications so as to reduce the cost of the building to a sum not to exceed three hundred thousand dollars, and which further avers the commencement and partial erection of the building in pursuance of such contract, and the resultant loss to the plaintiff, states a cause of action.

Id.—CONTINUING MISREPRESENTATION AS TO SKILL.—The effect of the false representation by the defendant of his special skill and knowledge did not terminate with the making of the contract, and the plaintiff, during the period of its execution, was justified in relying upon such representation.

Id.—CONTINUING MISREPRESENTATION AS TO COST—DECLARATION OF FACT.—The representation as to the cost of the building, whether regarded as a representation of fact or as an expression of opinion, was also of continuous influence and effect. It is held, however, that the representation in that connection imports the declaration of a fact, rather than the expression of an opinion.

Id.—WAIVER OF FRAUD—ESTOPPEL BY CONDUCT—INSUFFICIENT ALLEGATIONS OF.—Further averments in such complaint to the effect that after the execution of the contract the plaintiff failed to exact of the defendant the presentation of the plans and specifications of the building and a detailed estimate of its cost, as contemplated by the contract, and also paid on account of the building all but fifty thousand dollars of the estimated amount of its cost, before its fears were excited that the contract could not be completed within the

stated figure, are held, under the circumstances alleged, not to show that the plaintiff was guilty of such dereliction or culpable neglect in such matters as to constitute either a waiver of the fraud or an estoppel by conduct from charging upon it.

ID.—AGENT FOR CONSTRUCTION OF BUILDING—DUTY TO PRINCIPAL—RIGHT OF PRINCIPAL TO RELY ON REPRESENTATIONS.—From the moment the contract was entered into between the parties they ceased to be dealing at arm's length, and the defendant became, as architect, contractor, and superintendent of construction under the pay of the plaintiff, its trusted agent, charged with the duty to make full disclosure of all knowledge which he possessed and which it was desirable or important that his principal should know, and the latter had the right to rely upon his representations antecedently made and, subsequent to the contract, oft repeated.

ID.—ORDINARY PRUDENCE OF PRINCIPAL—MEANS OF KNOWLEDGE TO DISCOVER AGENT'S DECEIT.—In determining whether the plaintiff acted with ordinary prudence in such matters, the real test is whether or not it was guilty of a carelessness such as to bar its right of action for deceit against its trusted agent dealing with matters peculiarly within the knowledge of the agent and under false representations directly made by the agent, because it did not employ every avenue and means of knowledge open to it to discover the agent's perfidy.

ID.—TRUST REPOSED BY ONE PARTY TO CONTRACT IN THE OTHER—FALSE REPRESENTATIONS.—When one of the parties to a contract places a known trust and confidence in the other, any misrepresentation by the party confided in with respect to a material fact and constituting an inducement to the other party by which an undue advantage is taken of him, is regarded as a fraud. The same is true where the circumstances are such that one of the parties must necessarily trust in the representations of the other.

ID.—REPUDIATION OF CONTRACT UPON DISCOVERING DECEIT—COMPLETION OF BUILDING BY PRINCIPAL.—The plaintiff had the right, upon discovering the defendant's deceit while the building was in an unfinished condition, to repudiate its contract with the defendant, and to complete the building at a reasonable cost, and in so doing it did not waive its right of action to recover damages for the defendant's deceit.

ID.—ACTION FOR DECEIT—DAMAGES RECOVERABLE.—In such action the plaintiff is entitled to recover by way of damages the amount paid the defendant by way of commissions, and the excess cost of the building above the sum which it contemplated expending, and upon which alone it can receive any fair and adequate return by way of rental.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Charles S. Wheeler, J. C. McKinstry, Lilienthal, McKinstry & Raymond, and J. F. Bowie, for Appellant.

Walter H. Linforth, for Respondents.

HENSHAW, J.—This is an action to recover damages for fraud and deceit. To the complaint a demurrer, general and special, was interposed. The demurrer was sustained. Plaintiff declined to amend and from the judgment which followed prosecutes this appeal. The sufficiency of the complaint to pass a general demurrer is the matter to which the chief arguments upon either side have been addressed.

The allegations and charges in the complaint may be thus epitomized: Plaintiff is a family corporation organized to manage the properties of Edward Barron, deceased. Its stockholders are the heirs of the deceased, and none of its officers or stockholders has had any business experience or skill, and, in particular, are they without knowledge or skill in the profession of architecture and in the art of constructing buildings. Plaintiff owned a piece of land on Geary and Taylor streets in San Francisco. The improvements on this land were destroyed by the fire of April, 1906. Thereafter plaintiff desired to erect upon its land a building of a character that would return by way of rental a fair interest upon the value of the land and the building to be constructed thereon. The value of the land was three hundred thousand dollars. Plaintiff was advised that if a reinforced concrete and tile hotel building of six stories or six stories with a mezzanine floor, could be erected on the land, at a cost not to exceed three hundred thousand dollars, the premises could be rented and a fair return received therefrom. In particular, one De Wolfe, a man of good financial standing, would accept a lease of the land with such a building thereon at a rental sum equal to eight per cent per annum upon the value of the land and the total cost of the building. These facts became known to S. H. Woodruff (defendant herein), who is the sole owner of the stock of the Woodruff Company (defendant herein) a corporation, Woodruff's business operations being conducted under the designation of the Woodruff Company. S. H. Woodruff,

it is charged, made all the representations on behalf of the
Woodruff Company, so that hereafter in this statement and in
the discussion upon it S. H. Woodruff's name may alone be
used.  S. H. Woodruff represented that he was an architect
and designer of great skill and experience; that he had de-
signed and constructed many buildings in eastern cities.  Pic-
tures and plans of certain buildings were exhibited to plain-
tiff by Woodruff, and it was stated as a fact that Woodruff
had as architect designed the buildings shown in the pictures
and detailed on the plans.  It is charged that, in truth, Wood-
ruff was not an architect of skill or ability, was not qualified
to act as an architect, and had never designed or planned the
buildings of which the plans, diagrams, and representations
had been shown to plaintiff.  All these and other representa-
tions hereinafter to be referred to it is charged were falsely
made by defendant with the purpose and object of inducing
plaintiff to employ the defendants to erect its hotel building
for a commission of fifteen per cent of the moneys to be ex-
pended by plaintiff in its construction.  And to like effect it
is charged that certain promises, hereinafter to be adverted to,
were made by defendants without any intention of perform-
ance upon their part, and as a part of the same scheme to
induce plaintiff to intrust the construction of its hotel build-
ing to defendants.  Further, in this connection, it is charged
that the defendants positively asserted, stated, and represented
to the plaintiff as a fact that the maximum cost of construct-
ing such a building as the plaintiff then desired to erect, in-
cluding all commissions to the defendant, the Woodruff
Company, would not exceed the sum of three hundred thou-
sand dollars; that the building would be complete and suitable
and strictly first class in every particular; that in all proba-
bility the actual cost of the building would be much less than
the sum of three hundred thousand dollars; that the defend-
ants would be safe in saying it would only cost two hundred
and eighty-five thousand dollars, but to allow for all contin-
gencies they would fix the outside cost at three hundred thou-
sand dollars; that the defendants could not state how much
less the cost would be until plans and specifications were pre-
pared, but in no event would the cost exceed the sum of three
hundred thousand dollars; that this fact could be definitely
stated by the defendants without first obtaining plans and

specifications and they did definitely state it, and so assured plaintiff. Further, the defendants stated that if the plaintiff would sign a written contract, which was afterward signed, the defendants would without delay prepare full and complete plans and specifications of the kind provided for in the contract, and would thereupon forthwith make an actual detailed estimate of the cost of the proposed building if constructed as planned, "the estimate to be accurate to the last nail thereof"; that plaintiff could then see for itself that defendants' statements were true as to the maximum cost of the building. Defendants further represented that if the actual cost of the building should by any chance exceed the estimate of three hundred thousand dollars, the defendants could and would, and their experience would enable them to so change or modify the plans and specifications as to construct the building of the character which plaintiff desired and that such building could surely and certainly be constructed for a sum not to exceed three hundred thousand dollars. It is charged that these statements and representations, in so far as they were statements and representations of fact, were false and untrue; and in so far as they were statements of defendants' opinion they were not statements of a true opinion held by defendants or either of them, but were designedly false and misleading statements and representations and opinions not actually held by defendants or either of them, but were falsely asserted to be held by them for the purpose of inducing plaintiff to enter into the contract and to expend moneys for the construction of the building, from which expenditure the defendants would derive the named commission; that so far from believing that such a building could be constructed for the sum of three hundred thousand dollars, the defendants were of a contrary opinion at the time of making such statements, representations, and expressions of opinion, and believed and knew that the cost of a building of the kind and character referred to would be far in excess of three hundred thousand dollars. Plaintiff, relying upon the statements of fact, expressions of opinion, and false promises so made by defendants, on the twenty-second day of September, 1906, entered into a written agreement with the defendant, the Woodruff Company, whereby in effect the Woodruff Company was employed as architect, engineer, and contractor to erect the hotel build-

ing for a fifteen per cent commission on the moneys which plaintiff might expend in its construction; but prior to the date when plaintiff was thus induced to enter into this contract, defendants had employed skilled experts to estimate the cost of constructing the building and had been informed by them that the cost would far exceed the sum of three hundred thousand dollars; the defendants believed the truth of these statements and the correctness of the opinon so given to them by their own experts, but, nevertheless, they willfully and falsely and fraudulently, and with the intent and design of involving plaintiff in the expenditure of moneys as aforesaid, concealed this knowledge and made the false representations, expressions, and promises above set forth.

The only provisions of the written contract, which was thus entered into, necessary here to mention, are the following: The Woodruff Company agreed to furnish plans and specifications for a six-story (or six-story and mezzanine story, as required by the owner), reinforced concrete and tile hotel building, such plans to be made under the direction and according to the requirements of the Barron Estate Company.  It further agreed to supervise the work of construction, to purchase all necessary material, employ all necessary labor, and incur all other cost necessary, to complete the work according to the plans and specifications and any changes therein; to furnish to the Barron Estate Company a weekly statement of all material ordered and delivered upon the work; of all labor employed and every other reasonable statement in connection with the work.  The Barron Estate Company agreed to pay the Woodruff Company an amount equal to fifteen per cent of the total cost of the work, together with any changes therein, this commission to be computed on the total of each weekly statement of cost; and also to pay weekly the money to carry on the work.  The plans and specifications in the contract referred to were to be identified by the signatures of both parties thereto.  It is to be noted that this written contract contains no word to indicate the maximum cost of the building.

After the contract was made, the defendants again representing that the hotel building could be constructed within the limit of three hundred thousand dollars, further represented that it was advisable and necessary to allow defendants to proceed under the building contract with the clearing of the land

and the ordering of such material as was essential for the construction of the building thereon, without waiting for the preparation of detailed plans and specifications; and, inasmuch as the plans and specifications when prepared would merely show how much less than three hundred thousand dollars the building would cost, it would be safe in permitting the defendants to proceed immediately under the contract before preparing the plans and specifications; that defendants would in no event incur any expense or do any work in advance of the detailed plans and specifications and accurate estimate, other than such as would be absolutely required, whatever plans and specifications were finally adopted. Upon these and other representations of defendants plaintiff relied, and so allowed and sanctioned the defendants to proceed under the contract, and gave its consent to the commencement of the building. It is charged that in October, 1906, plaintiff exercised its option to have a mezzanine floor and so informed defendant. Defendants thereupon stated that the mezzanine floor would increase the cost of the building, but that the added cost could not by any possibility exceed the sum of fifty thousand dollars, so that the total cost of the building could not by any possibility exceed three hundred and fifty thousand dollars. De Wolfe, the prospective tenant, agreeing to pay a rental including interest upon this increased cost, the mezzanine floor was ordered under these representations of defendants. Defendants then prepared working plans and drawings of the exterior of the building, including the mezzanine floor, and again represented that the building, if constructed and completed in accordance with the plans and drawings, would not exceed the sum of three hundred and fifty thousand dollars, and further said that the defendants were preparing detailed plans and specifications from which a most accurate estimate of the cost could be made, but that in no event would the cost exceed three hundred and fifty thousand dollars. Again, later, on February 4, 1907, while the building was in process of construction, the defendants stated and represented to plaintiff and to De Wolfe, that owing to certain changes and alterations requested by De Wolfe, it would cost four hundred thousand dollars to build the hotel, unless De Wolfe would modify his request for the changes; that as a matter of fact the changes requested were unnecessary for the

proper construction of the building, but that with such changes and alterations requested the building could and would be constructed at an outside cost of four hundred thousand dollars. Plaintiff and De Wolfe, in reliance upon these representations, amended their agreement, and De Wolfe agreed with plaintiff to eliminate from his contract with it the limit cost therein specified; or, in other words, to pay a rental upon an estimated cost of four hundred thousand dollars. It is charged that all these statements were untrue, were at the time they were made by defendants known by them and by each of them to be untrue, and that they knew the fact to be that, irrespective of the changes requested by De Wolfe, the actual cost of the building would exceed six hundred thousand dollars. Plaintiff, however, was entirely ignorant of these facts, and believed in and relied upon the statements and representations of the defendants. All these representations and statements were so made to induce plaintiff to continue to expend money upon the building far in excess of the sum of three hundred thousand dollars and subsequently four hundred thousand dollars, which they were willing and expected to pay, and so to enable the Woodruff Company to receive its commissions of fifteen per cent upon this enhanced and excessive cost. The Woodruff Company proceeded with the construction of the building and plaintiff continued to make weekly payments until September, 1907. Prior to this date the Woodruff Company had received from plaintiff weekly payments aggregating over three hundred and fifty thousand dollars. When the payments had reached this sum, plaintiff expressed to defendants the fear that the building would cost more than four hundred thousand dollars to complete; whereupon defendants, to allay plaintiff's fears and to lull them into false security, stated that plaintiff would be entitled to receive large credits on account of moneys already expended in extra material ordered by the Woodruff Company, which extra material would not be required in the building. These statements and representations were false and were known to defendants to be false at the time of their making. About the middle of October, 1907, in response to repeated demands of plaintiff for an estimate of how much less than four hundred thousand dollars the building would cost, defendants for the first time informed plaintiff that the cost of

the building would exceed four hundred thousand dollars, that the building when completed would cost five hundred and ten thousand dollars. Thereupon plaintiff stopped work on the building, employed competent and honest experts to make an estimate of the cost of finishing the building, and was by these experts informed that the building completed in a reasonable and proper manner would cost a total sum of not less than seven hundred thousand dollars. Plaintiff did not discover the falsity of any of the various statements, representations, promises, and expressions of opinion made by defendants until after the defendants had made an oral statement that the total cost of the building when completed would be five hundred and ten thousand dollars, and at which time plaintiff had already expended four hundred and sixty thousand dollars in the construction of the building, and to complete the building would be compelled to expend two hundred and thirty thousand dollars additional. When completed, the total value of the land and building would not exceed seven hundred thousand dollars, while the total cost of the improvements alone would equal if it did not exceed seven hundred thousand dollars. Of the four hundred and sixty thousand dollars so paid out by plaintiff, by reason of the deceit practiced by defendants upon plaintiff, seventy thousand dollars were received by the defendants as commissions; the services of the defendants for which plaintiff was induced to pay seventy thousand dollars were of no value to plaintiff whatsoever. De Wolfe refused to accept a lease of the land and to pay interest on the actual cost of the building, and no other person will take a lease of the land and pay the plaintiff as rental a sum which will give a reasonable interest upon the value of the land and reasonable interest upon the actual cost of the improvements which, by reason of defendants' deceit plaintiff was induced and forced to make. Plaintiff has, by reason of its reliance upon the deliberate false representations, promises, and statements and opinions made by defendants, suffered detriment and damages in the sum of three hundred thousand dollars, for which it asks judgment.

Logically, the consideration of the case thus presented divides itself into two separate but intimately related phases: The first, the deceit practiced in inducing plaintiff to enter into the contract; the second, the continuing influence and

effect of that deceit, taken with the subsequent false representations, and the legal consequences which flow therefrom in the performance of the contract. It is fundamental, of course, that no matter what the nature of the fraud or deceit, unless detriment has been occasioned thereby, plaintiff has no cause of action. Therefore it is but a truism to say that if one party by fraud has been induced to enter into a contract executory as to both parties and nothing whatsoever is done under that contract, he has ordinarily suffered no injury therefrom. This contract was, of course, wholly executory. But, upon the other hand, in a contract such as this, it may not be said that the deceit which has induced the making of an executory contract is merged and ends in the contract itself. If the deceit does not end in the making of the contract, but still further influences a party to the contract in his conduct under it, it is obviously a deceit of a continuous nature, of which the injured party may justly complain. To use a simple illustration: If A has in contemplation the purchase of property which he is told is valuable for mining purposes and will buy or refuse to buy upon the opinion and report of a mining expert in whom he has confidence, and B represents to A and prevails upon A to believe that he has rare skill and experience as such mining expert, when in fact he has none, and their negotiations end in a written contract wherein B is to inspect and investigate the property and report his opinion as to its value for mining purposes and the transaction there ends, A has sustained no substantial injury. The deceit of B has but induced the making of an executory contract never executed. But if B, in pursuance of this contract, does make a favorable report upon the property, upon the assurance of which A purchases it and it proves to be worthless, no one, we think, will question but that B's deceit in securing the employment is a continuous deceit operating to render him liable for the loss which A has sustained. And this, regardless of the fact whether the opinion upon the value of the property which he gives to A is honest or not. His deceit lies back of the report and is based upon his false representation of the possession of special skill and knowledge qualifying him to make such a report. So in this consideration the contract, though executory, having been in part at least executed, the deceit of defendants in procuring the making of the contract

and the placing of themselves in a position to reap advantage therefrom is a deceit which runs concurrently with the execution and contaminates from beginning to end their dealings with plaintiff. It will not do, therefore, to say that up to the time the contract was entered into plaintiff and defendants were dealing at arm's length. True they were, but it is equally true that but for the representations made, opinions expressed, and promises given the contract would not have been entered into, and having been entered into, plaintiff was absolutely justified in a continued reliance upon them until charged in some manner with knowledge of the falsity of one or another of them. The four alleged misrepresentations and falsifications leading up to and inducing the making of the contract are (1) the representation of S. H. Woodruff's great architectural and structural knowledge and skill when in truth and in fact he possessed none; (2) the positive assertion as a fact, or as an expression of opinion, that the maximum cost of the building such as plaintiff desired to erect, would not exceed three hundred thousand dollars; (3) the representation that if plaintiff would sign the contract the defendants would without delay prepare full and complete plans and specifications of the kind provided for in the contract, and would forthwith make an actual detailed estimate of the cost, such estimate "to be accurate to the last nail thereof"; (4) the representation that if such estimate exceeded three hundred thousand dollars, by the exercise of their knowledge and skill, defendants could and would change and modify the plans and specifications so as to reduce the cost of the building to a sum not to exceed three hundred thousand dollars.

Manifestly the effect of the first of these declarations did not and could not die with the execution of the written contract. Plaintiff employed defendants because of the false representations of the special skill and knowledge of S. H. Woodruff, and not only executed the contract because of its belief in his possession of such special skill and knowledge, but, beyond peradventure, it was, during the period of the execution of the contract, justified in relying upon this representation touching Woodruff's special skill and ability. The second representation, whether regarded as a representation of fact or as an expression of opinion, was also and obviously of continuous influence and effect. It is of course, generally

speaking, true, that an action for deceit cannot be founded upon the mere expression of an opinion. But the qualifications and modifications of this general rule are as important as the rule itself. Those qualifications and modifications are numerous. It is unnecessary to attempt to illustrate them all. But bearing in mind that an expression of an opinion, if honestly made, is an expression of what the speaker *believes to be* a fact, it becomes apparent that by the expression of a dishonest opinion to one entitled to rely upon it, deceit is practiced, injury may be worked and an action will lie. Thus the opinion of an expert employed to report upon a mine would be but the expression of his judgment and if honestly, though mistakenly, made of course no injury cognizable in law, equity or good morals could result. But instantly that the expert expresses a dishonest opinion, though it still be but an opinion, he has made himself liable in an action for deceit. Again, as pointed out by Pomeroy (2 Pomeroy's Equity Jurisprudence, 3d ed., sec. 878) : "Wherever a party states a matter which might otherwise be only an opinion and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction so that the other party may reasonably treat it as a fact and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule and may be a fraudulent misrepresentation." These two illustrations of instances in which expressions of opinion may be made the basis of an action for deceit are sufficient for the purposes of this consideration. If for them support by authority be considered necessary, it will be found in our own state in such cases as *Crandall* v. *Parks,* 152 Cal. 776, [93 Pac. 1018], where Professor Pomeroy's language is quoted with approval, and in such other cases as *Hedin* v. *Minneapolis etc. Institute,* 62 Minn. 146, [54 Am. St. Rep. 628, 35 L. R. A. 417, 64 N. W. 158] ; *People* v. *Peckens,* 153 N. Y. 576, [47 N. E. 887] ; *Watson* v. *People,* 87 N. Y. 561, [41 Am. Rep. 397] ; *Simar* v. *Canady,* 53 N. Y. 298, [13 Am. Rep. 523] ; *Hickey* v. *Morrell,* 102 N. Y. 454, [55 Am. Rep. 824, 7 N. E. 321], and *Schumaker* v. *Mather,* 133 N. Y. 590, [30 N. E. 755]. Therefore, touching the second of these alleged false misrepresentations, it is legally a matter of indifference under the pleading whether it be considered the expression of an opinion or the

representation of a fact. If the former, then the complaint
shows that it was not the expression of an honest opinion but
was dishonestly made with knowledge upon the part of the de-
fendants of its falsity. If the latter, then it was a declara-
tion of a fact, which not only was not true, but which defend-
ants, it is charged, knew to be untrue. Treated then either
as an expression of opinion or as a representation of fact, its
influence in inducing plaintiff to employ defendant cannot be
denied. It is perhaps, however, proper to add for the guid-
ance of the trial court that we think the language thus charged
to have been uttered by defendants imports the declaration
of a fact rather than the expression of an opinion. For, while
it is true, as is argued on behalf of respondents, that because
of the fact that the plans and specifications had not been set-
tled upon and agreed to, it was an impossibility for any human
being to state in terms of dollars and cents what the exact cost
of the building would be, and that therefore the language at
the most could be but an expression of defendants' opinion,
the answer is that in this day of architectural skill and busi-
ness knowledge of construction in connection therewith, any
competent architect, while not able to give in advance of ac-
cepted bids a dollar and cent estimate of the cost of a building,
can name as matter of fact a figure beyond which the cost will
not go. Such a statement is a statement of fact, and it is such
a statement that defendants are charged with having made.
The third representation requires here no consideration. It
is sufficient to say that it is charged that the complete plans
and specifications were never presented to plaintiff. Whether
defendants were justified in their failure so to do is a subject
of later consideration. The fourth representation is mani-
festly connected with and dependent upon the third, and for
the reasons given requires no detailed discussion.

Thus we are brought to the transactions between the par-
ties occurring after the execution of the contract, the history
of which transactions has been set forth in the foregoing state-
ment of facts. Respondents' position in this regard is two-
fold. *First,* that plaintiff had the means of ascertaining
before any damage was sustained that the representations
complained of were untrue, that it was guilty of laches in not
employing those means, and therefore cannot be heard to com-
plain. *Second,* that having knowledge that one representation

was false, since the plans and specifications were not forthwith furnished and the detailed estimate was not forthwith given, the plaintiff was put upon inquiry whether all representations might not be false, and from that moment was charged with full notice; that having continued with the contract after such knowledge and means of knowledge, it waived all right it might otherwise have had to charge defendants in an action for deceit.    As part of their argument herein respondents urge that by its own showing plaintiff did not exercise ordinary care and prudence, and for its failure so to do has barred itself of any right to relief.    (*Oppenheimer* v. *Clunie,* 142 Cal. 313, [75 Pac. 899].)    The propositions thus set forth are the most serious and debatable ones in the case.    By the complaint it is shown and admitted (1) that plaintiff paid in excess of three hundred and fifty thousand dollars before its fears were excited that the contract would not be completed within the stated figure of four hundred thousand dollars; (2) it is argued that insistence by plaintiff on the presentation of the plans and specifications with a detailed estimate of the cost, all as contemplated by the written contract would have served either to bind defendants or to have established that their statements could not be substantiated.    If, therefore, in point of law, it was the duty of plaintiff to have exacted the presentation of these plans, specifications, and estimates, its failure so to do would be a display of a lack of ordinary care and prudence, while, upon the other hand, if these plans and specifications and estimates had been demanded and were not forthcoming, there would be notice of trickery upon the part of the defendants and of a failure to live up to their written agreement.    Unquestionably, then, if plaintiff was derelict and culpable in these matters, the inevitable results would be either a waiver of the fraud or estoppel by conduct from charging upon it.

But we think the complete answer to all this is found in the fact that the situation of the parties was changed immediately and in most essential particulars from the moment their contract was entered into.    From that instant they ceased to be dealing at arm's length, and from that moment the defendants became, as architects, contractors, and superintendents of construction under the pay of plaintiff, its trusted agents. (*Needham* v. *Chandler,* 8 Cal, App. 126, [96 Pac. 325].)

Dealing with such trusted agents, plaintiff, as we have said, had the right to rely upon the representations antecedently made and, subsequent to the contract, oft repeated. It had, therefore, the right to rely upon the professed ability and skill of defendants and upon their statement of fact that whatever should be finally agreed upon as the plans and specifications, the maximum cost of the building would not exceed three hundred thousand dollars, or, with the accepted modifications, four hundred thousand dollars. Still further, by virtue of this agency and relationship of trust and confidence, it became the high duty of defendants to make full disclosure of all the knowledge which they possessed and which it was desirable or important that their principal should have. Thus, as charged, defendants knew that S. H. Woodruff was not a skilled architect, contractor, and constructor. Yet they concealed this knowledge from the principal, to whom it was of great moment. They knew, as charged, that the building could not be constructed for three hundred thousand dollars, and that it would cost a vastly greater sum. This knowledge likewise was of the utmost value to plaintiff and it was knowledge which it was the duty of defendants to disclose to it. (Clark on Contracts, p. 320; 14 Am. & Eng. Ency. of Law, pp. 69 and 70; 2 Kent's Commentaries, p. 582.) The test, then, of plaintiff's conduct—the determination of the question as to whether or not it acted with ordinary prudence, is not the test which would be applied between two parties acting at arm's length, each for his own interest. The real test will be found in the answer to the question whether or not plaintiff was guilty of a carelessness such as to bar its right of action for deceit against its trusted agent dealing with matters peculiarly within the knowledge of the agent and under false representations directly made by that agent, because it did not employ every avenue and means of knowledge open to it to discover that agent's perfidy. Upon reason and authority this question must be answered in favor of plaintiff. Indeed, so plain is the proposition, so strongly must it commend itself to every mind, that we need do no more than cite *Marston* v. *Simpson,* 54 Cal. 190, and to quote briefly the principle as enunciated in 14 Am. & Eng. Ency. of Law, page 123, where it is said: "When one of the parties to a contract places a known trust and confidence in the other, any misrepresentation by the

party confided in with respect to a material fact and consti-
tuting an inducement to the other party by which an undue
advantage is taken of him, is regarded as a fraud.   The same
is true where the circumstances are such that one of the par-
ties must necessarily trust in the representations of the other.''
So, even if plaintiff could have discovered the falsity of the
representations as to maximum cost by exacting a delivery of
plans and specifications and estimates, since it reposed and had
a right to repose a special confidence in the integrity and abil-
ity of defendants, a confidence induced by the false representa-
tions of the defendants themselves, and  since under these in-
ducements it entered into a contract involving relationships
of trust, it was not guilty of any lack of prudence of which
defendants can be heard to complain in not exacting the pres-
entation of these estimates; nor, upon the other hand, did it
waive its right of action for the subsequently discovered deceit
by having failed to do so.   And, finally, in connection with
this matter, the payment by plaintiff of an excess over three
hundred and fifty thousand dollars before its fears were excited
is explained by the further false representations of defend-
ants that there would be coming to plaintiff large sums by way
of rebate upon materials ordered and paid for but not used.

The last proposition which invites attention is that of dam-
ages, respondents contending that plaintiff has shown no detri-
ment which at law or in equity could afford a foundation for
damages.   What has already been said disposes of the conten-
tion that any such damages were waived by the conduct of
plaintiff.   Finding itself with an unfinished building upon its
hands, but one of two courses was open to it—to abandon the
unfinished building to the elements, or to complete it at rea-
sonable cost.   Either course would have been justifiable.   The
latter unquestionably was the more prudent.   In so doing,
under the facts and circumstances here set out, it is idle to
contend that plaintiff did or permitted, procured, connived at
or consented to anything in the nature of a waiver of its right
of action.   (*Schmidt* v. *Mesmer*, 116 Cal. 267, [48 Pac. 54].)
Its procedure under the contract with defendants to its par-
tial performance was, as has been said justifiable.   Its repudia-
tion of defendants and its completion of the building after
such repudiation was wholly within its right.   (Cooley on
Torts, sec. 505; *St. John* v. *Hendrickson,* 81 Ind. 350; 14 Am.

& Eng. Ency. of Law, pp. 171, 172; 20 Cyc., p. 92.)    Coming thus specifically to the question of damages, it is at once apparent that the allegation that defendants received seventy thousand dollars by way of commissions for services procured through fraud and of no value to plaintiff, would, upon adequate proof, entitle it to a recovery in this amount.    Still further, upon what may be termed general damages, the averments of the complaint amount to a charge that plaintiff was fraudulently induced and compelled to expend in the construction of a building three hundred thousand dollars in excess of the four hundred thousand dollars which alone it contemplated expending, and upon which latter sum alone it can receive any fair or adequate return by way of rental.    If, in truth, plaintiff has been so damaged, we think it clear that the law affords it redress.    To use an extreme case to illustrate the principle: If a man by fraud were induced to erect a seven hundred thousand dollar building in the heart of the Sahara desert, for the use of which building there was absolutely no demand, it would not be an answer to say that the building was economically and honestly constructed and represented a legitimate expenditure of seven hundred thousand dollars.    So here we conceive that if plaintiff can establish that, under the circumstances charged, it suffered a loss of three hundred thousand dollars, or any part thereof, it is justly entitled to recover it, if it further establishes that the loss was occasioned in the manner charged.    Respondents' objection, therefore, we think, goes rather to evidentiary matters than to the rule of damage. A large and growing city is not the Sahara desert, and the burden of proof cast upon plaintiff will necessarily be a heavier one than that which a plaintiff would have to carry in the illustration given.    Nevertheless, as we have said, in so far as it can be established that plaintiff was fraudulently induced to expend its moneys for a structure not, as to cost, in accordance with representations, and not capable of returning a fair interest upon the invested capital, respondents have made themselves liable.    (*Spreckels* v. *Gorrill,* 152 Cal. 389, [92 Pac. 1011]; *Stratton's Independence* v. *Dines,* 135 Fed. 449, [68 C. C. A. 161].)    For, as Chief Justice Marshall well said, in *Russell* v. *Clark's Executors,* 7 Cranch, 69, [3 L. Ed. 271]; "If an act in itself immoral, in its consequences injurious to another, performed for the purpose of effecting that injury,

be not cognizable and punishable by our laws, our system of jurisprudence is more defective than has hitherto been supposed."

The special demurrer does not call for particular consideration. But for the reasons heretofore given the judgment is reversed, with directions to the trial court to overrule the general demurrer to the complaint.

Sloss, J., Lorigan, J., and Melvin, J., concurred.

Rehearing denied.