[Civ. No. 14153.   Second Dist., Div. Two.   Dec. 14, 1943.]

LOUIS ELLIS, Respondent, v. FRANK B. NAVARRO et al., Appellants.

Donald Kolts, Oral Finch and McLaughlin & McGinley for Appellants.

Benjamin J. Goodman for Respondent.

WOOD (W. J.), J.—A judgment in the sum of $10,332.24 was entered in favor of plaintiff Ellis and against defendants Frank B. Navarro, Jean Minthorne and Norman E. Glover. The two defendants first named have appealed.

Prior to July 7, 1941, plaintiff and defendant Glover were partners doing business under the name, Rite Products Co. They owned coin operated phonographs which they placed in various locations throughout Southern California under arrangements whereby the income from the machines was divided between the owners of the locations and Rite Products Co. Defendant Navarro was engaged in the same kind of business, which he conducted in direct competition with Rite Products Co. In addition to the phonograph business referred to, Rite Products Co. owned and operated marble game machines which were placed in various locations under arrangements similar to those under which the phonographs were operated. Rite Products Co. also owned a retail record store.

A contract in writing was signed on July 7, 1941, by Ellis, Glover, Navarro and Minthorne by which it was agreed that the phonograph business which had been conducted by Rite Products Co. should be transferred to Beacon Music Co., a corporation which had previously been organized by Navarro and Minthorne for some other purpose. No stock in Beacon Music Co. theretofore had been issued and the corporation was not engaged in any business. By the terms of the contract 150 shares of the capital stock of Beacon Music. Co. were to be issued to Navarro, 150 shares to Minthorne and 150 shares to Ellis. It was set forth in the contract that Ellis and Glover had "an equity" in the phonographs, records and other personal property, an inventory of which was attached to the contract; that the property described in the inventory was incumbered by contracts upon which there was a balance due of approximately $14,500, and that the reasonable loan value of the equity of Ellis in the personal property described in the inventory was estimated to be $14,500. The 450 shares of stock were to be issued "to the extent of the reasonable loan value of the equity of Ellis. . . ." It was provided in the contract that Navarro and Minthorne should arrange for the refinancing of the existing indebtedness on the personal property and should procure a loan from the Morris Plan Bank of San Francisco for this purpose, they agreeing to guarantee the loan if necessary. It was provided that the salaries to be drawn from the corporation by Navarro, Minthorne and Ellis were to be equal but that none of them should be required to devote full time and attention to the business of Beacon Music Co. The exemption of the marble game business of Rite Products Co. from the contract was recognized by a provision that Ellis could occupy a portion of the premises of the corporation for his marble game business and pay one-third of the rent therefor. The contract recognized the fact that Navarro was engaged in a similar business for his own account and a provision was inserted therein that he should "not take any of the business or spots of the Beacon Music Co. and the Beacon Music Co. will not take any of the business or spots of Navarro."

As soon as the contract was signed Navarro and Minthorne took possession of the phonograph machines and equipment of Rite Products Co. Ellis left the state on vacation and did not return until September 23, 1941. Navarro and Minthorne

claimed that during the absence of Ellis it developed that the total liabilities of Rite Products Co. were in excess of $17,000 and that it would be impossible to transfer the assets of Rite Products Co. to Beacon Music Co. without discharging the liabilities in excess of the $14,500 loan which had been procured. They complained of the absence of Ellis from California and on September 5, 1941, induced Glover to sign an agreement, purportedly on behalf of Ellis as well as himself, whereby all of the parties were relieved from the obligations of the contract of July 7, 1941. Ellis and Glover were to refrain from engaging in the record or phonograph business in Los Angeles county for a period of three years. Navarro and Minthorne remained in control of the phonograph business and the personal property which had been transferred. The sum of $1,000 was paid to Glover for Rite Products Co.

Upon his return to Los Angeles Ellis repudiated the deal made by Glover and commenced this action, claiming that Navarro, Minthorne and Glover had conspired against him and had converted his personal property and business. The main contentions made on this appeal are that the evidence is insufficient to sustain the findings of the trial court that Ellis' property and business were converted and that the damages suffered were much less than the sum awarded.

Respondent points to a number of breaches of the contract of July 7 by appellants, notably the failure to have any stock of Beacon Music Co. issued; the appropriation by appellants of receipts from the business to their own use; the refusal of appellants to permit him to use any part of the premises for his own business; and the improper use of service locations of Rite Products Co. for Navarro's private business. Aside from these charges, it is thoroughly established that respondent has been ousted from his business without justification. It was especially provided in the contract that the parties would not be required to devote full time to the business, each having a separate business of his own. The lengthy vacation taken by respondent, while perhaps subject to criticism, did not justify appellants in ousting him from the business. The record contains evidence that the claims against the property mentioned in the agreement of July 7 were discounted and were settled for the sum of $11,336.64. The trial court was justified in concluding that the total indebtedness of Rite Products Co. was not more than the amount of the loan procured in accordance with the agreement of the parties. More-

over, it was not stated in the agreement that Rite Products Co. was free from debts, the representation being that the personal property to be conveyed to Beacon Music Co. was encumbered by contracts upon which there was a balance due of approximately $14,500.

The court properly held that the purported contract of September 5, 1941, was not binding upon respondent. The instrument was not signed by appellants, and Glover signed it on the condition that it should be satisfactory to respondent. Glover testified: "Q. And what else was said? A. Well, I told him at the time when they told me to sign that agreement that I couldn't sign without Mr. Ellis and that the agreement would be cancelled if it wasn't entirely satisfactory to Mr. Ellis, and I would also have to have Mr. Minthorne's signature on it. Q. What did they say about that? A. They said they would get both signatures on it and if it wasn't— if the document wasn't satisfactory to all parties it would go back the way it was originally intended. The Court: Whose were the 'both signatures'? A. Mr. Minthorne and Mr. Ellis." Moreover, Glover had no authority to cancel respondent's rights under the agreement of July 7 or to dispose of his interest in the partnership property. "An act of a partner which is not apparently for carrying on the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners." (Sec. 2403, subd. (2) Civil Code.) It is apparent from the testimony quoted and from other testimony in the record that Glover was not authorized to execute the document dated September 5 and that appellants were aware of his lack of authority.

It was not necessary that the action be brought in the name of Rite Products Co. or that it be limited to an accounting between partners. A partner who is deprived of possession of the business through a conspiracy between a co-partner and a third person may sue the partner and the third party for damages on the conspiracy or he may sue the third person alone. (*Sterman* v. *Zien,* 17 Cal.App.2d 414, 420 [62 P.2d 160].)

Appellants charge that the damages awarded are excessive. In such an action as the present one the measure of damages is the amount which will compensate for all the detriment proximately caused whether it could have been an-

ticipated or not. (Civ. Code, § 3333; *Moropoulos* v. *C. H. & O. B. Fuller Co.*, 186 Cal. 679 [200 P. 601].) Respondent is not limited to the actual value of the property of which he was deprived but he is also entitled to prospective profits which he lost as the natural and direct consequence of the wrongful conduct of appellants. ■ Evidence of profits, both past and present, is admissible to determine the compensation to which he is entitled. (*Caspary* v. *Moore*, 21 Cal. App.2d, 694, 699 [70 P.2d 224], and cases there cited.) In the agreement of July 7, signed by all of the parties, it is stated that Ellis and Glover had an "equity" in the personal property in the sum of $14,500. Of this sum two-thirds was owned by Ellis and one-third by Glover. It is provided in the agreement that a loan should be obtained from the Morris Plan Bank on this property in the sum of $14,500. It is common knowledge that such a loan could not be obtained unless the property was worth far more than the amount of the loan. ■ During the period from July 7, to October 23, appellants collected from the coin operated phonograph machines the sum of $10,307.97. They did not present their records to show what part of this sum should be taken out for expenses but it is reasonable to conclude that the business was quite profitable. The court found upon sufficient evidence that appellants also had received the sum of $967.43 as additional proceeds from the operation of the business. There is also evidence that respondent is entitled to the sum of $540 for the loss of the use of trucks improperly taken by appellants. We cannot hold that the amount of damages allowed by the trial court is unreasonable.

The evidence is ample to sustain the findings of the court both as to the conversion of respondent's business and property and as to the amount of the damages suffered.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 10, 1944.