[Civ. No. 15146. Second Dist., Div. One. Sept. 11, 1946.]

GERTRUDE H. ANDERSON, Respondent, v. FREDERIC G. THACHER et al., Appellants.

John W. Preston and C. E. Spencer for Appellants.

Bailie, Turner & Lake and L. S. B. Ritchie for Respondent.

WHITE, J.—Separate appeals are prosecuted by defendants from a judgment entered against them jointly in the sum of $40,000 after trial before the court sitting without a jury. The action was one to recover secret profits in connection with the exchange of certain real properties.

Insofar as the evidence may be conflicting, it is axiomatic that on appeal we must consider the evidence most favorably to respondent. In accordance with that rule, we feel justified in making the following statement of facts, although as to some of them there was a sharp conflict in the evidence.

During the summer of 1937, respondent Gertrude H. Anderson, 73 years of age and residing in San Diego, California, owned an apartment house in that city called the Garden Court Apartments which she desired to exchange at a valuation of $55,000 for some Los Angeles business property. Her husband, A. C. Anderson, age 76 years, with whom she resided, was a licensed real estate broker and used the San Diego address of George L. Barney Co. (hereinafter referred to as Barney Co.), a real estate agency, on his application for his license, but he had not been active in the real estate business for a number of years prior to 1937.

In connection with the exchange of their property, the Andersons consulted W. J. Brown, sales manager of Barney Co. at San Diego. He, in turn, contacted defendant Frederic G. Thacher, a licensed real estate broker in Los Angeles, soliciting the latter's cooperation with Barney Co. in locating some Los Angeles business property for the proposed exchange. Defendant Thacher agreed to cooperate as requested, and stated that he would attempt to find a suitable property and submit the same for consideration.

Soon thereafter, defendant Thacher submitted to Mr. Brown of Barney Co. a proposition for an exchange of property at St. Andrews and Santa Monica Boulevard in Los Angeles for plaintiff's San Diego property, and Brown submitted the proposition to plaintiff Anderson. In an exchange of letters, Brown asked Thacher for a 50-50 split of commissions if a deal was consummated. Because she lived in San Diego, plaintiff, upon submission of the just-mentioned proposition, wrote to George Wood, certified public accountant in Pasadena who did the accounting work for the Andersons and in whom they had great trust and confidence, asking the latter to make an examination of and investigate the proposition submitted by defendant Thacher. After investigation by Mr. Wood he

wrote plaintiff advising against the acceptance of the fore-going proposition and the same was rejected by her.

About the middle of August, 1937, Wood advised the Andersons that defendant Thacher had shown him a piece of property on Wilshire Boulevard near Doheny Drive which the former desired the Andersons to see. Pursuant to an appointment, the Andersons came to Los Angeles and, for the first time, met defendant Thacher at this property. The Andersons introduced themselves to defendant Thacher, after which, according to the testimony of plaintiff, "Mr. Anderson said we had come up because Mr. Wood had told us that Mr. Thacher wanted us to see this particular property, and that is why we came. Then Mr. Anderson said that he had had a conversation with Mr. Brown in which Mr. Brown had said that Mr. Thacher and Mr. Brown would represent us as our agent in any deals that might be made between—about an exchange of our San Diego property for any Los Angeles business property, and Mr. Thacher said that was true. . . ."

Plaintiff rejected this proposed trade and advised defendant Thacher to submit any other proposals to her advisor, Mr. Wood.

During the times above-mentioned defendant Sackett was a licensed real estate broker maintaining offices at 3871 Wilshire Boulevard, in Los Angeles. He was acquainted with defendant Thacher whose offices were at 3875 on the same boulevard. Some time in August or September 1937 defendant Sackett first learned of the Garden Court Apartments from defendant Thacher. This information Sackett testified was given to him about the time he "started negotiations" on a piece of property on Hollywood Boulevard in Los Angeles, owned by Harry W. Chase and his sisters Mable L. Bireley and Gladys C. Herrington. Shortly thereafter, defendant Sackett went to San Diego to see the Garden Court Apartments at the suggestion of defendant Thacher. Defendant Sackett advised defendant Thacher that the Hollywood Boulevard property could probably be used in making a deal for the San Diego property of plaintiff but advised Thacher that the sum of $125,000 in cash would be required in the transaction. Defendant Sackett himself testified he was informed by Mrs. Herrington, one of the owners of the Hollywood Boulevard property, that the terms of the deal must be all cash, that no property would be taken in trade by the

Chase family, and that Sackett could have anything offered in exchange, provided the Chase family got their price of $125,000 cash. In any event there is ample evidence that at all times defendant Sackett was aware of the fact that the Hollywood Boulevard property could be acquired for the sum of $125,000 cash and that the owners would require a deposit of $5,000 in any escrow opened in connection with the sale.

Defendant Margaret Johnstone was the mother-in-law of defendant Sackett and resided at his home. At the trial it was stipulated that she was over 75 years of age and, by reason of illness, was unable to be present, but that if she were present and sworn as a witness she would testify that each and every act performed by her in connection with the transactions herein was done and performed at the instance of Sackett, and that the latter received such proceeds as were obtained by her from the transactions. The record reflects that neither defendant Sackett nor Mrs. Johnstone had sufficient funds to purchase the Hollywood Boulevard property or to meet the escrow requirements later involved in the transactions.

Defendant Thacher testified he did not know defendant Mrs. Johnstone at any time during the course of the negotiations or prior to the completion of the transaction later to be referred to and involved in this litigation. He also testified that he was first apprised of the fact that her name was to be used in the transaction by defendant Sackett shortly before the opening of the escrow thereon. But, notwithstanding his testimony in this regard; defendant Thacher used Mrs. Johnstone's name as the purported purchaser of the plaintiff's San Diego property and stated she had agreed to pay him a $5,000 commission.

Coming now to the circumstances surrounding the transactions out of which this litigation arose, it appears that in the early part of September, defendant Thacher informed Mr. Wood, plaintiff's advisor, that the Hollywood Boulevard property could be obtained in trade for plaintiff's Garden Court Apartments and $125,000 in cash, and "that was the lowest it could be had for." At the request of defendant Thacher, Mr. Wood inspected the Hollywood Boulevard property. He took a photograph of it and sent the same to plaintiff, "went to the City Hall and looked at the City Assessor's record and found out when the building was erected and found the assessed valuation of the land and buildings and

found out to whom the property was assessed.'' He reported to plaintiff that the property for three years prior thereto was assessed to Gladys C. Herrington. Mr. Brown, sales manager for Barney Co., testified that ''after the Andersons were introduced to Mr. Thacher he took them over completely and I wasn't consulted on any of the matters regarding agency or anything else outside of the fact that we had our written agreement as to commissions.''

In the light of what we shall hereinafter have to say, we attach significance to a letter written under date of September 11, 1937, by defendant Thacher to Mr. Brown of Barney Co. stating that Wood, plaintiff's advisor, had taken pictures of the property and that ''We are asking for the Garden Court (plaintiff's San Diego property) and $125,000 to make the deal and it can be done. I just put the San Diego property up to them about two weeks ago and they were lukewarm, but have since been down to see the stuff and seem ready to deal. . . .''

On September 19, Mr. and Mrs. Anderson, at the request of defendant Thacher, came to Los Angeles to look over the Hollywood Boulevard property. On the evening of the date of their arrival they inspected the exterior of the property and concluded they did not want it. On the following morning they called defendant Thacher on the telephone and advised him they had decided not to take the property. Defendant Thacher then requested that he be permitted to come to their hotel and talk with them, to which they consented. Upon his arrival he said he could not tell them about the property unless he could show them the interior, and requested that they accompany him so that he could take them through and show them the interior of the building. This was agreed to and defendant Thacher showed them through the building, stating that the same which was three stories in height, had a foundation sufficient to support a height-limit building; that the rents on the property were far too low and should be increased by $500 a month or more; that he would be willing to act without charge as plaintiff Anderson's manager for the building until the rents had been increased in that amount. He further stated that the Hollywood property was worth $200,000 and would increase in value, while plaintiff Anderson's San Diego property would go down in value; that the only reason that they could get the building at that time was because there were several members in the family

owning it, that they wanted to divide their interests, and that one of the members would accept the San Diego property while the others would divide the cash. Defendant Thacher again stated that the property could be gotten for $125,000 in cash and the plaintiff's San Diego property and that that was the least that it could be obtained for. Defendant Thacher also stated that the owners would be willing to spend $1,000 on improvements, since the outside of the building needed painting, and that in the event the owners would not consent to such expenditure he would make the necessary improvements himself. Plaintiff Anderson then asked defendant Thacher if he would be willing to represent her in closing the deal and he said that he would. In answer to questions as to whether she believed the statements that defendant Thacher had made to her, plaintiff testified "I did. . . . I began to have confidence in Mr. Thacher at the Hollywood Boulevard property when he said he would pay that $1,000 if the former owners didn't; and another thing that gave me confidence was he said he would do this work for $500—— I mean, would do this work for nothing until the rents came up to $500 a month more, and I thought that was unusually fair. I thought it was honest and square. And another thing that made me have confidence in Mr. Thacher was the fact that he said he knew about San Diego property, had lived there and been a broker there, and also knew about Los Angeles property, and seemed so well posted, and then, if Mr. Wood and my husband had opposed me in it I would have taken Mr. Thacher's word, because I was thoroughly sold on Mr. Thacher, and continued to be sold on him until the day before he was discharged. I believed every word he said."

At the suggestion of defendant Thacher, Mr. and Mrs. Anderson rode with him to the Sixth and Oxford Branch of the Security-First National Bank in Los Angeles, where they were taken to the escrow department and the terms of the escrow were thereupon dictated by defendant Thacher. The escrow, which was numbered 113-8299-S, was dated September 20, 1937, and called for the execution and delivery into escrow of a deed signed by Gertrude H. Anderson to Margaret Johnstone covering the Garden Court Apartments in San Diego, California, together with the payment of $125,000 in cash, in exchange for a deed of conveyance by Margaret Johnstone of the property on Hollywood Boulevard in Los Angeles. Mrs. Johnstone was not present at this time and her escrow

instructions were signed later. While the escrow instructions were being prepared at the bank, plaintiff's husband stated to defendant Thacher that inasmuch as Mr. Brown, Mr. Thacher and himself were representing Mrs. Anderson he thought that the commission should be split three ways. To this defendant Thacher replied "that was understood." The commission to be paid by plaintiff was set at $2,750 on a basis of $55,000 valuation of the Garden Court Apartments. Replying to an inquiry from plaintiff's husband defendant Thacher stated that he would receive a $5,000 commission from the other side and that the entire commission would be polled and split three ways. The reasonable market value of the Garden Court Apartments was established as being $40,000.

When the escrow papers had been signed defendant Thacher handed the escrow instructions, bill of sale, sales agreement, and the deed to Mrs. Anderson, asking her to sign them. Noting that Margaret Johnstone's name instead of that of a brother and three sisters had been set forth in the instructions as the owners of the Hollywood Boulevard property and as the purchaser of the Garden Court Apartments, plaintiff's husband inquired as to why only one person had been named in the instructions because he understood from defendant Thacher that there were several members of the family owning the property. To this defendant Thacher replied that Mrs. Johnstone was a member of the family, was one of the owners of the Hollywood Boulevard property, and was acting for the other members of the family for the convenience of all concerned because the others lived out of town. In response to a question from plaintiff as to whether it was all right for her to sign the papers defendant Thacher said, "Yes," and she thereupon affixed her signature.

Defendant Thacher then suggested to Mrs. Anderson that she make a $5,000 down payment as an evidence of her good faith. Thereupon plaintiff made out a check for $5,000 which was deposited in the escrow.

While it appears that the leases on the Hollywood Boulevard property bore the names of the members of the Chase family as lessors at the time they were approved by plaintiff, it appears from the record that neither plaintiff nor her husband read the leases nor noted the names of the parties thereto.

According to his own testimony, defendant Thacher knew

that Mrs. Johnstone was not the owner of the Hollywood Boulevard property on September 20, 1937. He was also aware of the fact that defendant Sackett was receiving a broker's commission from the owners of the Hollywood Boulevard property and that he was putting the same into the deal. Furthermore, at the outset of the negotiations, and some time prior to September 30, 1937, defendant Thacher agreed with his codefendant Sackett that he would wait for his commission in the deal until a loan could be made on the Garden Court Apartments.

There was no mention in the plaintiff Anderson-Johnstone escrow instructions of the $5,000 commission payable to defendant Thacher until after the instructions were signed by Margaret Johnstone, when an instruction to pay a $5,000 commission to defendant Thacher was written in the Anderson-Johnstone instructions in pen and ink in the handwriting of defendant Sackett. It also appears from the record that at a conference between defendant Sackett and Mrs. Herrington and her brother Harry W. Chase, two of the owners of the Hollywood Boulevard property, the purchase price of said property was discussed. Finally it was agreed that the building needed painting and the owners said that they would paint the building and would come down on the price of the property from $125,000 to $124,000. This, however, was denied by Mr. Reynolds, representative of the Chase family, who was present at the conference in question.

The Chase-Johnstone escrow, No. 113-8310-B, was opened at the Sixth and Oxford Branch of the Security-First National Bank of Los Angeles on September 22. In that escrow defendant Margaret Johnstone agreed to hand the bank $124,-000 in payment of the purchase price of the Hollywood Boulevard property and the owners agreed to accept that amount for a conveyance of such property. This escrow was opened two days after the plaintiff Anderson-Johnstone escrow was established. The Chase-Johnstone escrow also called for a deposit of $5,000 by the defendant Mrs. Johnstone within 12 days after the signing of such escrow and provided that if such deposit was not made the sellers might withdraw their papers from the escrow. This $5,000 was withdrawn from the plaintiff Anderson-Johnstone escrow and put into the Chase-Johnstone escrow.

The record reflects that so far as plaintiff Anderson was concerned she paid the $5,000 hereinbefore referred to into

the escrow on September 20, and later on October 4 paid into her escrow the further sum of $121,204. Under written instructions signed by defendant Mrs. Johnstone the bank transferred from the plaintiff Anderson-Johnstone escrow to the Chase-Johnstone escrow cash in the sum of $117,582.28, and this sum, together with the fund transferred by defendant Thacher to the Chase escrow, totalled $119,965.62. A further sum of $2,000, out of commissions payable to defendant Sackett as a broker for the Chase family, was deposited in the Chase-Johnstone escrow by defendant Sackett. The Chase escrow called for the payment of $124,000 by defendant Mrs. Johnstone, and out of this sum the Chases agreed to pay a real estate broker's commission of $4,350; $2,350 of which was to be paid to defendant Sackett and $2,000 to another representative of the Chase family. Under date of October 6, 1937, defendant Sackett filed an instruction in the Chase escrow directing the transfer of the sum of $2,000 ''from funds accruing to my account to the credit of Margaret Johnstone and hold the difference of $350 for me at the close of escrow.''

The record further reflects that the plaintiff Anderson-Johnstone escrow was closed October 7, 1937, and prior to that time application for a loan on the Garden Court Apartments was made by defendant Thacher through the San Diego Trust and Savings Bank for $12,500. On September 29, 1937, defendant Thacher wrote to Mr. Brown of Barney Co. enclosing the application for the loan signed by defendant Mrs. Johnstone. On October 7, 1937, the San Diego Trust and Savings Bank sent a check to defendant Margaret Johnstone on account of this loan in the sum of $12,384.20. The loan was secured by deed of trust, together with a chattel mortgage covering certain personal property contained in the Garden Court Apartments.

Prior to the closing of escrow and under date of September 30, 1937, defendant Thacher wrote a letter to Mrs. Anderson confirming his agreement to manage the property on Hollywood Boulevard without any charge to plaintiff until such time as the income would be increased $500 or more a month or ''until such time as it is mutually agreed to alter the arrangement.'' The letter further stated, ''I have in my possession a written agreement to pay immediately upon presentation of bills to a total not exceeding $1,000 for such painting, repairs, and renovation as you may decide to do on the property. . . .''

After both escrows had been closed defendant Thacher commenced negotiations for an exchange of the Garden Court Apartments and an increase of the loan on the property from $12,500 to $20,000. An escrow was opened in which defendant Margaret Johnstone deposited a deed conveying the Garden Court Apartments to Martha T. Forward subject to a $20,000 trust deed and chattel mortgage in exchange for a San Diego home owned by Martha T. Forward. Out of the proceeds of this loan the prior loan of $12,500 to the San Diego Trust and Savings Bank was paid.

Thereafter, on instructions from defendant Thacher, application for a loan of $10,000 on the Forward property was made by defendant Margaret Johnstone and a loan of that amount secured by trust deed on the Forward property was obtained from Prudential Life Insurance Company.

Thereafter, in February, 1939, under the instructions of defendant Thacher, the Forward property was sold to Benjamin and Eulaliee Polak, subject to the aforesaid $10,000 trust deed for a cash consideration of $2,500.

Plaintiff Anderson discharged defendant Thacher as managing agent of her Hollywood Boulevard property on February 10, 1940, but such discharge was not due to the transaction which gave rise to this lawsuit, but was occasioned because an action had been brought against plaintiff Anderson by one of the tenants in the Hollywood Boulevard property.

The record reflects that not until September 6, 1940, did plaintiff discover the true situation with reference to the aforesaid transaction when George Carter, a Los Angeles real estate broker, called upon her and asked if she would be willing to sell the Hollywood Boulevard property for $110,000. When she replied that she had paid $175,000 for it, Mr. Carter stated that it had been on the market for around $120,000. In the course of this same conversation, plaintiff was advised that defendant Margaret Johnstone was not a member of the Chase family, the former owners of the Hollywood Boulevard property, and that Harry W. Chase lived at Merced, California. Subsequent to Mr. Carter's visit, plaintiff's husband communicated with Harry W. Chase and met the latter at the law offices of Winterer and Ritchie in Los Angeles about September 19, 1940. Upon that occasion Mr. Chase advised plaintiff's husband of the details of his escrow with defendant Margaret Johnstone and the following day, upon the return of plaintiff's husband to San Diego, he related to her what he

had learned. This was the first time plaintiff learned that Mrs. Bireley and Mrs. Herrington both lived in Los Angeles and were sisters of Mr. Chase and that the Chase family did not personally know defendant Margaret Johnstone. Thereafter, plaintiff's husband went to the Security-First National Bank in Los Angeles, examined the escrow instructions and in that way plaintiff first discovered that the Hollywood Boulevard property had been purchased from the Chase family for a consideration of $124,000. On February 5, 1941, plaintiff instituted this action.

Epitomizing the factual background surrounding this litigation, we are confronted with a situation wherein plaintiff sought the aid of real estate brokers to exchange a piece of property owned by her in San Diego worth $40,000. At the conclusion of more or less extensive negotiations she parts with her $40,000 property plus approximately $125,000 in cash and receives in return therefor Los Angeles business property that had for some time been offered in the open market for and was sold for the sum of $124,000. In other words, plaintiff pays $165,000 for property anyone could have purchased for not more than $125,000. Some three years later she learns that her San Diego property was not included in the exchange made with the owners of the Los Angeles property and that the owners of the last-named property received only $124,000 for the same while her San Diego property was converted into a sizable sum for division among certain of the aforesaid brokers who participated in the transaction involving plaintiff's property and the acquisition by her of the Hollywood Boulevard property in Los Angeles.

The court found on substantial evidence that the plaintiff's Hollywood Boulevard property was inspected by Mr. Wood, plaintiff's advisor, at the request of defendant Thacher who informed Wood that the above-mentioned property "could not be purchased from the then owners thereof for less than the San Diego property clear, and one hundred and twenty-five thousand dollars ($125,000) cash."

The plaintiff inquired of said defendant Thacher whether he could purchase said Hollywood Boulevard property for her for less than $125,000 plus her San Diego property, to which defendant Thacher replied "that he could not and that the present owners would not accept less than $125,000 and the San Diego property for said Hollywood Boulevard property." As to the other facts hereinbefore narrated the

court found the same to be true and that insofar as the aforesaid representations allegedly made by defendant Thacher are concerned the court found that plaintiff relied upon such representations. The court also found that all defendants knew that defendant Thacher had accepted 'employment for and on behalf of plaintiff and also knew that the Hollywood Boulevard property together with leases thereon and the personal property in such leases described, were being openly offered for and could be purchased for not more than $125,000 cash. The court also found that insofar as the profits made upon the San Diego property by defendants were concerned, the same was pursuant to mutual agreement divided between them save and except that defendant Margaret Johnstone did not receive any of said profits. The court found that defendant Thacher was at all times the agent and representative of plaintiff in the aforesaid transaction; ''That by reason of the fraud and deceit practiced upon the plaintiff by the defendant as hereinbefore found, and by reason of the secret profit gained by the defendants through their scheme and plan hereinbefore found, said plaintiff has been damaged in the sum of forty thousand ($40,000) dollars.''

Judgment was entered accordingly and from such judgment defendants prosecute this appeal.

### DEFENDANT THACHER'S APPEAL

In urging a reversal of the judgment against him, defendant Thacher contends that he was not a fiduciary of plaintiff in the exchange of properties. ▮ The law is well settled that unless defendant Thacher bore a fiduciary relationship toward plaintiff and was her confidential agent, she is not entitled to recover any profits, secret or otherwise, which were realized by the defendants. (*Read* v. *Mortgage Guarantee Co.*, 11 Cal.App.2d 137, 143, 144 [53 P.2d 377].)

▮ An agency may be created not only by written instrument or by word of mouth but may be implied from the conduct of the parties (*Brand* v. *Mantor*, 6 Cal.App.2d 126, 130 [44 P.2d 390]). ▮ In the instant case the evidence shows that defendant Thacher was approached on behalf of plaintiff by the sales manager of Barney Co., real estate brokers in San Diego, who enlisted Thacher's aid to assist plaintiff in finding some suitable Los Angeles business property to exchange for plaintiff's San Diego property. Subsequently, the Andersons came to Los Angeles at the request of defen-

dant Thacher and at that time Mr. Anderson told Thacher that he understood that the latter and Mr. Brown, the sales manager of Barney Co., would represent the Andersons as agents in any deal they might make for an exchange of their San Diego property for Los Angeles property, and Thacher's reply was that that was true. Again, when on a subsequent visit to Los Angeles and a meeting with defendant Thacher by the Andersons, plaintiff herself asked defendant Thacher if he would be willing to represent her in closing the deal, he said that he would be willing so to do. As heretofore indicated by the testimony of Mr. Brown, Thacher "then took the Andersons in charge." Defendant Thacher also told plaintiffs that the owners of the Los Angeles property would allow $1,000 for repairs on the building and that he would act as plaintiff's property manager for the building without compensation until the rents had been increased at least $500 per month. Defendant Thacher also assured plaintiff that he knew that the deal could not be consummated for less than the exchange of her San Diego property plus $125,000 in cash. He also told plaintiff that defendant Johnstone was a member of the Chase family when he knew that she was not, for he was told by defendant Sackett who the members of the Chase family were. Throughout the escrow negotiations defendant Thacher represented plaintiff who had returned to her San Diego home. We are not impressed with defendant Thacher's claim that he was the agent of defendant Sackett because the latter, himself a licensed real estate broker, was representing the owners of the Hollywood Boulevard property as broker, and certainly defendant Thacher was not the agent of defendant Johnstone because he was not even acquainted with her until after the deal was closed. We deem it unnecessary to here repeat the evidence hereinbefore narrated in detail. Suffice it to say that it establishes a fiduciary relationship between plaintiff and defendant Thacher and imposes upon him the fiduciary duties of a real estate agent which under the California law demands the same obligation of undivided service and loyalty that it imposes upon a trustee in favor of his beneficiary (*Rattray* v. *Scudder,* 28 Cal.2d 214, 222 [169 P.2d 371]). The evidence warranted the inference by the court that defendant Thacher was aware of the fact that plaintiff's San Diego property was not to be included in the exchange because he agreed to wait for the $5,000 commission due him from the Chase-Johnstone escrow until

a mortgage could be placed upon the San Diego property after its acquisition by defendant Johnstone. The claim that defendant Thacher was not acting as plaintiff's agent is clearly inconsistent with the documentary and oral evidence introduced and heretofore set forth. Appellant Thacher's contention that the property was worth all that plaintiff gave for it is immaterial because plaintiff does not complain that she was induced to pay more than the property was worth, but that she would have paid less if defendant Thacher had been faithful to his trust.

Appellant Thacher's contention that he owed no greater duty to plaintiff in the exchange of properties than that which is owed by a middleman to one or the other of the parties whom he brings together is without merit. ■ A broker acts as a middleman when his duty is simply to bring together two or more people who desire to exchange their property and whose entire duty is performed when he has brought the respective parties together. In such a case the broker is in no sense representing conflicting interests. He has nothing whatever to do with the trade. Under his contract the advice and assistance of a middleman is not called for. Therefore he is not an agent in the strict sense of the word. ■ But in the case now engaging our attention we have no such situation. On the contrary, after plaintiff advised defendant Thacher of her rejection of the Hollywood Boulevard property exchange he actively interested himself and urged upon plaintiff the benefits that would accrue to her through such an exchange, told her that it would be a good deal for her, that he would obtain an allowance of $1,000 from the owners to repair the property, and agreed that if the owners refused such an allowance he would himself pay for such repairs. He stated to plaintiff that the rents were too low and that if she would buy the property he would act as her agent free of charge until the rents were raised at least $500 per month. In the preparation and conduct of the escrow he was active in advising and assisting plaintiff. To hold that such activities and conduct on the part of defendant Thacher cast him in the role of a middleman would do violence to reason and challenge credulity. Furthermore, under the facts here present defendant Thacher was clothed with authority to do everything necessary, usual and proper in the ordinary course of business to effectuate the purpose of his agency (Civ. Code, § 2319). Here defendant Thacher not only was invested with

but actively exercised discretion in advising plaintiff and in negotiating for her the exchange of the properties in question (*King* v. *Reed*, 24 Cal.App. 229, 234 [141 P. 41]).

Appellant Thacher urges that even though it be assumed he became a fiduciary he owed a greater duty to defendant Johnstone, the other principal, which forbade a disclosure of the information upon which plaintiff's cause of action is based, but the answer to this claim is that, as heretofore pointed out, defendant Thacher was not the agent of defendant Johnstone. Indeed, he was not even acquainted with her during the times here pertinent. Furthermore, when an agent acts for adverse principals with the acquiescence of each, he has a bounden duty to act with fairness to each, and is bound to disclose to each all facts which he knows or should know would reasonably affect the judgment of each in permitting such dual agency (Rest., Agency, § 392). In the present case there can be no doubt that plaintiff would not have consummated the exchange of properties as made had she known that the Hollywood Boulevard property was being purchased for $124,000 cash. Defendant Thacher not only failed to disclose the truth but made the misrepresentation that the Hollywood Boulevard property could not be obtained for less than the San Diego property of plaintiff plus the sum of $125,000 cash. The dominant characteristic of a fiduciary relationship is the confidence reposed by one in the other, and a broker occupying such a relationship cannot further his own interests and enjoy the fruits of an advantage taken of such a relationship. He must make a full disclosure of all material facts surrounding the transaction that might affect the decision of the principals. Defendant Thacher insists that the record is barren of any evidence that he knew that the Hollywood Boulevard property could be or was purchased for $124,000, but he did know that the property was owned by the Chase family and that defendant Johnstone was not a member of that family. He knew defendant Johnstone had no interest in the property and was also aware that plaintiff's San Diego property was not being transferred to the real owners of the Hollywood Boulevard property, but to defendant Johnstone, and he agreed to wait, and waited for his $5,000 commission in the transaction until a loan could later be obtained on plaintiff's San Diego property after its transfer to defendant Johnstone. The court was justified in drawing an inference that defen-

dant Thacher was aware that plaintiff's San Diego property was to be obtained as a secret profit in the transaction, out of which he was to be paid his $5,000 commission when a loan could be obtained on the same after its acquisition by defendant Johnstone.

Defendant Thacher concedes his knowledge of the fact that defendant Johnstone did not have title to the Hollywood Boulevard property at the time it was first submitted to plaintiff, but insists that plaintiff had or was chargeable with the same knowledge. The answer to this is that when plaintiff inquired of defendant Thacher as to why the escrow was opened in the name of defendant Johnstone, he replied that she was a member of the Chase family who owned the property and was acting for the other members who resided outside of the city of Los Angeles—a statement which he knew to be false. The facts present in the instant controversy present a situation wherein sound public policy demands that a transaction involving duplicity and concealment on the part of an agent against an innocent principal should not be permitted to stand. We therefore hold that the findings of the court that defendant Thacher occupied a fiduciary relationship to plaintiff and that he violated his fiduciary duty of disclosure, and beyond that made misrepresentátions, all of which resulted in damage to plaintiff through secret profits made as a result of Thacher's abuse of the confidence reposed in him are supported by substantial evidence and inferences reasonably deducible therefrom.

Finally, defendant Thacher urges that plaintiff's cause of action is barred by the provisions of subdivision 4, section 338 of the Code of Civil Procedure. In view of the findings of the trial court hereinbefore set forth, supported as they are by competent evidence, defendant Thacher's contention in this regard cannot be sustained. Where, as here, a confidential relationship is involved, the rigid rules applied in cases where relief is sought from fraud by actions commenced more than three years after the perpetration of the fraud, that the complaint must contain allegations as to time when the fraud was discovered, how the discovery was made, and why it was not made sooner, are somewhat relaxed (*Rutherford* v. *Rideout Bank,* 11 Cal.2d 479, 486 [80 P.2d 978, 117 A.L.R. 383]). The evidence in the case at bar clearly establishes a confidential relation between plaintiff and defendant Thacher, and that the latter abused the confidence placed in

him. ▮ When the misrepresentations are intentional rather than negligent plaintiff's negligence in failing to discover the falsity thereof is no defense (*Seeger* v. *Odell*, 18 Cal. 2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]). The same case is authority for the statement that the fact that an investigation would have revealed the falsity of the misrepresentations will not always bar recovery. ▮ Defendant Thacher's claim that plaintiff is also charged with knowledge of the contents of the public records of Los Angeles County, which showed the true ownership of the Hollywood Boulevard property (Civ. Code, § 1213) is answered by the Supreme Court in *Seeger* v. *Odell, supra,* page 415, wherein it is said: ". . . and it is well established that he is not held to constructive notice of a public record which would reveal the true facts. (Rest. Torts, sec. 540 (b); see cases cited in 12 Cal.Jur. 759, 764; Prosser, Torts, 750, 751.) The purpose of the recording acts is to afford protection not to those who make fraudulent misrepresentations. but to *bona fide* purchasers for value."

▮ Under the facts of the instant case it cannot be said that plaintiff's conduct in the light of her own intelligence and information was manifestly unreasonable. Therefore, she will not be denied recovery. Defendant Thacher cannot be heard to complain that plaintiff reposed too much confidence in him. "No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool" (*Seeger* v. *Odell, supra,* p. 415). The law does not applaud fraud and condemn the victim thereof for his credulity. Peculiarly pertinent to the case at bar is the following language used by the Supreme Court in *Victor Oil Co.* v. *Drum,* 184 Cal. 226, 241 [193 P. 243]:

"The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defrauded him on the ground, forsooth, that he did not discover the fact that he had been cheated as soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on his part. The present case is not of that character."

▮ The possible but antiquated authority that one must assume that everyone with whom he has a business transaction is a rogue and act accordingly will not receive judicial approval. Courts rather will hold that one can act upon the

presumption that there exists no intention to defraud him (*Tidewater Southern Ry. Co.* v. *Harney*, 32 Cal.App. 253, 260 [162 P. 664]).     We do not deem it necessary to here repeat the testimony concerning defendant Thacher's conduct toward and the representations made by him to plaintiff. Suffice it to say that the findings of the court that such representations were not true and were made by defendant Thacher for the purpose of inducing plaintiff to make the exchange; that plaintiff believed the representations and relied thereon in making the exchange; and if she had not so believed and relied thereon she would not have entered into the transaction, are supported by competent and substantial evidence. We therefore hold that the evidence in this case is reasonably susceptible to the conclusion that there existed a continuing confidential and fiduciary relationship between plaintiff and defendant Thacher. The evidence satisfies us as it did the trial court that the delay upon plaintiff's part about which appellant Thacher complains was induced by his own representations to her, and by reason thereof, even if it be conceded that the statute of limitations commenced to run as contended for by him, he is estopped from taking advantage of the statute (*Calistoga National Bank* v. *Calistoga Vineyard Co.*, 7 Cal.App.2d 65, 72 [46 P.2d 246]).

   Though it be conceded as claimed by defendant Thacher that some of the representations made by him related more or less to matters of opinion, nevertheless, expressions of opinion to avoid an action for deceit or fraud, must be of an opinion honestly entertained by the person making the statement (*MacDonald* v. *de Fremery*, 168 Cal. 189 [142 P. 73]; *Phelps* v. *Grady*, 168 Cal. 73 [141 P. 926]; *Barron Estate Co.* v. *Woodruff Co.*, 163 Cal. 561, 573 [126 P. 351, 42 L.R.A.N.S. 125]; *Zwart* v. *Landfield*, 93 Cal.App. 328, 333 [269 P. 740]).

   And whether representations are of a fact or matters of opinion is largely dependent upon the surrounding circumstances (*Hall* v. *Mitchell*, 59 Cal.App. 743 [211 P. 853]; *Hodgkins* v. *Dunham*, 10 Cal.App. 690, 705 [103 P. 351]).

   That means of knowledge were open to plaintiff does not necessarily preclude her from relief. Only when the circumstances are of such a character that inquiry becomes a duty is the failure to make it a negligent omission (*Denson* v. *Pressey*, 13 Cal.App.2d 472, 476, 477 [57 P.2d 522]). We find nothing in the evidence here that would excite the suspicions of an ordinarily prudent person situated as plaintiff

was, or that would put such a person on inquiry. The record contains evidence that would justify a trial court in finding that the plaintiff was sufficiently diligent in discovering the alleged fraud practiced upon her and that the action was instituted within a reasonable time thereafter.

### DEFENDANT SACKETT'S APPEAL

This defendant occupied no fiduciary relation to plaintiff and his liability is dependent on whether he joined a conspiracy to defraud plaintiff through the making of a secret profit to be divided between plaintiff's fiduciary Thacher and defendant Sackett. If through fraud and conspiracy other defendants assisted defendant Thacher in violating his obligation to his principal by making a secret profit and by retaining the proceeds therefrom, they, as well as the fiduciary Thacher, are equally liable for all the consequences of the conspiracy, regardless of the extent of their participation or the share of the secret profits obtained by them. It is not the conspiracy but the civil wrong which gives rise to the cause of action. If plaintiff is successful in proving an injury of the nature claimed she may recover in her action against all those who have united or co-operated in inflicting that injury. (*Revert* v. *Hesse,* 184 Cal. 295 [193 P. 943].) And where, after the violation of a fiduciary obligation, an amount is found to be due from the agent, judgment for the same amount may also be rendered against those proven to have fraudulently aided in the attempt of the fiduciary to obtain secret profits, although they themselves are not fiduciaries, and even though they receive no share of the profits (*Lomita Land & Water Co.* v. *Robinson,* 154 Cal. 36 [97 P. 10, 18 L.R.A.N.S. 1106]). The trial court reached the conclusion that defendant Sackett was implicated in the conspiracy and in view of the fact that the evidence was in conflict or that it was possible to draw conflicting inferences from that part of the evidence which was not of itself conflicting, the conclusion that a conspiracy was established and that Sackett participated therein cannot be disturbed upon appeal. Because of the inherent difficulty in proving a conspiracy, it has been held that a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances (*Revert* v. *Hesse, supra*). That both defendants Thacher and Sackett knew that plaintiff's San Diego property was not to be included as a consideration

for the Hollywood Boulevard property is attested by the fact that both defendants agreed that Thacher was to wait for his $5,000 commission until plaintiff's property was acquired by defendant Johnstone and a loan could be negotiated thereon. The question might also be appropriately asked as to why defendant Sackett selected defendant Johnstone, his mother-in-law, to act as a ''dummy'' in the escrow opened in connection with the Chase property? Was it to keep secret the fact that plaintiff was not, as defendant Thacher represented to her, transferring title to her San Diego property in exchange for the Hollywood Boulevard property? Why was a double escrow resorted to when if there was nothing to conceal from plaintiff a single escrow would have sufficed? The conduct of defendant Sackett is hereinbefore set forth in detail. ■ The foregoing narrative of testimony received at the trial showing as it does a course of conduct on the part of the defendants Thacher and Sackett teeming with fraudulent representations and replete with intrigue, deception and duplicity, warranted the trial court in finding that a civil conspiracy was formed by defendants Thacher and Sackett, and put into operation, and that damage resulted to plaintiff from an act or acts done in furtherance of a common design which was to obtain plaintiff's San Diego property as a secret profit and to divide such profits between at least two of the conspirators.

Other contentions advanced by defendant Sackett are answered by what we have said in our determination of the appeal taken by defendant Thacher.

### Defendant Johnstone's Appeal

That this defendant knowingly aided in furtherance of the design or scheme there can be under the evidence little if any doubt. She willingly permitted the use of her name in the dual escrow opened by defendants Thacher and Sackett in carrying out their design to defraud plaintiff. This defendant knew she did not have the money with which to purchase the Hollywood Boulevard property when she signed the Chase-Johnstone escrow. She had read and was conversant with that escrow which specified a cash purchase by her for $124,000 and she had read and was equally conversant with the Anderson-Johnstone escrow instructions requiring plaintiff to pay $125,000 together with her San Diego property. This defendant willingly acted as a ''dummy'' to aid her codefendants in every step of the transactions, and likewise, in subsequent

developments through which money was obtained on plaintiff's San Diego property after it was acquired by her she acted as a figurehead in the Forward-Johnstone escrow and in the Polak-Johnstone escrow in San Diego. She opened a bank account in which the proceeds from the loans on plaintiff's San Diego property were deposited. It was the cooperation of defendant Johnstone that made it possible to acquire the San Diego Garden Court Apartments without the knowledge or consent of plaintiff Anderson or of the Chase family, owners of the Hollywood Boulevard property. Whether a defendant conspired together with others for any purpose, and if so what that purpose was, are primarily questions of fact.

In the state of the evidence here presented we would not be justified in disturbing the conclusion arrived at by the trier of facts that defendant Johnstone joined in the plan and scheme initiated by defendants Thacher and Sackett to obtain plaintiff's San Diego property as a secret profit; that her conduct in acting as a "dummy" in the dual escrows and in the subsequent negotiations through which plaintiff's property was disposed of, were illegal and in furtherance of the common scheme or design to achieve the unlawful purpose of the conspiracy. As heretofore pointed out, the liability of a conspirator is not dependent on whether such conspirator receives any of the benefits of the conspiracy. By reason of the surreptitious and deceptive means resorted to by her codefendants and in which defendant Johnstone willingly used her name, it cannot be said that the trial court's inference that she had knowledge of the conspiracy and its unlawful purpose was unreasonable. As stated at the outset of this opinion, much of the evidence to which we have adverted was contradicted, but under familiar rules for which citation of authority is unnecessary, we cannot retry the case, nor substitute our judgment for that of the trial court in the matter of credibility of witnesses.

It results from what we have said above that the judgment against each defendant must be affirmed. It is so ordered.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied October 4, 1946, and appellants' petition for a hearing by the Supreme Court was denied November 4, 1946.