[Civ. No. 32800.   Second Dist., Div. Two.   May 22, 1969.]

SAMUEL G. ROSENTHAL, Plaintiff and Respondent, v.
DONALD S. GOULD et al., Defendants and Appellants.

240

Pollock, Pollock & Fay, Eugene P. Fay, Allan J. Greenberg, Kaplan, Livingston, Goodwin, Berkowitz & Selvin, Barry Nakell and Herman F. Selvin for Defendants and Appellants.

Silverton, Ruderman & Graf, Horace A. Ruderman, Justin Graf and Jay J. Plotkin for Plaintiff and Respondent.

HERNDON, Acting P. J.—Defendants Gould, Tipp, Tipp Properties, Cotta, Polacheck, Davis and Robbins appeal from the judgment awarding respondent Rosenthal $105,808.87 as damages which the trial court[1] found were sustained by respondent as the result of a fraud perpetrated in connection with the dissolution of a partnership which had been formed by respondent Rosenthal and appellant Gould to engage in

---

[1] By stipulation the trial herein was bifurcated. A jury having determined the issue of liability, the question of the appropriate amount of damages was submitted to the court alone.

the practice of optometry. The appellants, other than Gould, were the owner-lessors, or their agents, of the premises on which the practice was conducted prior to, and after, the dissolution of the partnership.

Appellants contend that (1) the evidence was insufficient to support the judgment; (2) the court and counsel for the plaintiff were guilty of prejudicial misconduct; and (3) the damages awarded were excessive. We have concluded that only the final assignment of error is well taken.

No useful purpose would be served by detailing the conflicting, and often self-contradictory, testimony presented in the instant case. It is sufficient to state that viewed in support of the judgment, in accordance with established rules of appellate review, it is sufficient to sustain the implied finding of the trier of the fact adverse to appellants on the issue of liability. In skeletal form it appears that in July 1959, respondent and Gould, who was then employed by respondent at the latter's offices in Reseda, California, formed a partnership to engage in the practice of optometry. To that end they purchased the optometry practice of one Halpern then being conducted in Santa Monica on premises leased from the predecessors in interest of appellant lessors.

Halpern's practice was purchased for approximately $20 000 although it was then doing a gross sales volume of $4 000 to $5,000 per month. Gould was to operate the Santa Monica office, receiving a draw or salary of $850 per month, subsequently increased to $1,000, and the partners agreed to divide any remaining profit equally. Halpern's lease, which would expire on February 29, 1964, required payment of a fixed rental of $600 per month, plus 8 percent of the gross sales in the premises exceeding $90,000 annually. Although the partnership agreement was for no specified term, its duration, for all practical purposes, was conterminous with the term of the lease since any earlier termination would require the partners to agree that one of them would either buy the other's interest or sell his own interest to the other. That is to say, neither partner could unilaterally terminate the partnership and oust the other from the premises during the term of the lease nor would either partner be willing to surrender his interest in the venture without adequate compensation so long as it was to continue as a going business operated by the other.

The record clearly indicates that throughout the term of the original lease the lessors, who had purchased the property subject to the Halpern lease, were not satisfied with

the return being realized thereunder and did not intend to enter into a new lease on comparable terms. As previously indicated, the testimony of the parties concerning the events immediately preceding the termination of the partnership and surrounding the execution of a new lease with Gould alone is highly conflicting. Whichever version of these events might have been accepted by the trier of fact, the evidence would have been sufficient to support all necessary inferences favorable to the verdict.

The appellant lessors testified that they did not intend to renew the lease either with the partnership or with Gould alone at the time they ordered the partners to vacate the premises following the expiration of the lease, the act which caused Gould and respondent to enter into the dissolution agreement which respondent challenged in the instant action on the basis of his claim that he was fraudulently induced to agree. Appellant lessors argued to the trier of fact, and continue to urge on appeal, that it was only *after* the dissolution of the partnership that it occurred to them to change their position and to enter into a new lease with Gould alone on terms more favorable to them. Similarly, appellant Gould argued that in good faith he had negotiated the dissolution agreement with respondent at a time when he, too, had no reason to believe a new lease could be obtained that would permit continued operation of the business on the premises.

Respondent, on the other hand, contended that the evidence indicated that *prior* to the dissolution agreement Gould and the owner-lessors had reached an understanding that a new lease would be executed on terms that could be made more attractive to the owner-lessors by reason of the fact that respondent's one-half share of the profits from the business would be freed for division between Gould and the owner-lessors in the form of increased rental.[2] Respondent contended that this secret arrangement not only constituted a breach of Gould's fiduciary duty to respondent but, further, that affirmative acts of the owner-lessors were intended to, and did, deceive respondent as to the true future plans and expectations of the parties.

The trier of fact determined to accept respondent's version of the facts and reject appellants'. While the direct evidentiary foundation for its inferences may well be described as slender, nevertheless, it is unquestionably of sufficient sub-

---

[2] The new lease obtained by Gould provided for a minimum monthly rental of $1,300 against 10 percent of a total monthly gross sales.

stance to support the judgment on the issue of liability. Certainly it seems unlikely that respondent would have sold to Gould his one-half interest in the partnership for approximately $11,000, if he had known that a new five-year lease, with an option for a further five-year term, could be obtained.

The annual gross volumes and net profits, respectively, of the partnership during its term had been: in 1960, $45.427 and $15,890; in 1961, $49,446 and $15,959; in 1962, $59,743.57 and $22,364; in 1963, $63,813 and $26,054; and in 1964 (first 4 months) $24,224 and $10,238. Thereafter, under Gould's sole operations the gross volumes during the years 1965 and 1966, respectively, had been $87,114.25 and $96,793. One expert testified that in the usual practice of the kind here involved, the percentage of net profit to gross volume tends to increase as the gross volume increases and it should average approximately 40 percent in a business in the $100,000 range.

Whatever may be the proper measure of damages herein, it is apparent that Gould obtained an advantage over respondent when the latter, believing the established practice on the premises was at an end, had sold his share of the business' good will for the relatively nominal sum of $2,000; the balance of the purchase price representing the value of the physical assets, accounts receivable, etc. As stated in *Laux* v. *Freed*, 53 Cal.2d 512, 522 [2 Cal.Rptr. 265, 348 P.2d 873] :

''Manifestly, as partners in the ownership and operation of the entire property before it was divided, plaintiff and defendant bore a confidential and fiduciary relationship to each other. [Citation.] As partners, neither had the right to take an unfair advantage or secure an undue benefit, and the burden is on the one seeking an advantage to show complete good faith and fairness toward the other. ▉ The duty of good faith and the burden of showing it extend to the dissolution and liquidation of partnership affairs, as well as to the sale by one partner to another of his interest in the partnership. [Citations.]'' 

▉ As to the appellant owner-lessors it is equally clear that their liability is co-extensive with Gould's if, as determined by the trier of the fact, they conspired with Gould and aided and abetted him in the breach of his fiduciary obligations. The observations of the court in *Anderson* v. *Thacher*, 76 Cal.App.2d 50, 72 [172 P.2d 533], are equally apposite here:

''[Defendant Sackett] occupied no fiduciary relation to plaintiff and his liability is dependent on whether he joined a

conspiracy to defraud plaintiff through the making of a secret profit to be divided between plaintiff's fiduciary Thacher and defendant Sackett. If through fraud and conspiracy other defendants assisted defendant Thacher in violating his obligation to his principal by making a secret profit and by retaining the proceeds therefrom, they, as well as the fiduciary Thacher, are equally liable for all the consequences of the conspiracy, regardless of the extent of their participation or the share of the secret profits obtained by them. It is not the conspiracy but the civil wrong which gives rise to the cause of action. If plaintiff is successful in proving an injury of the nature claimed she may recover in her action against all those who have united or cooperated in inflicting that injury. [Citation.] And where, after the violation of a fiduciary obligation, an amount is found to be due from the agent, judgment for the same amount may also be rendered against those proven to have fraudulently aided in the attempt of the fiduciary to obtain secret profits, although they themselves are not fiduciaries, and even though they receive no share of the profits [citation]. The trial court reached the conclusion that defendant Sackett was implicated in the conspiracy and in view of the fact that the evidence was in conflict or that it was possible to draw conflicting inferences from that part of the evidence which was not of itself conflicting, the conclusion that a conspiracy was established and that Sackett participated therein cannot be disturbed upon appeal. Because of the inherent difficulty in proving a conspiracy, it has been held that a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances [citation].''

■ We reject appellants' contentions that the alleged acts of misconduct on the part of court and counsel constituted prejudicial error. During the trial herein, appellants did not object or take exception to the five remarks of the trial court which they now cite as being prejudicial. In none of the cited instances could these remarks reasonably be given the interpretation urged by appellants and they were not, in fact, adverse to them. They appear, at worst, to have constituted nothing worse than a manifestation of a proclivity on the part of the trial judge to indulge in the use of colorful colloquialisms and irrelevant asides. To the extent that this tendency toward facetiousness may have created an inappropriate lack of judicial decorum in the proceedings, the onus thereof appears to have been equally and impartially distributed among the parties and was not of such character or of such seriousness

that it could have deprived either appellants or respondent of the fair trial to which they were entitled.

Similarly, the conduct of respondent's counsel now urged as reversible error was not made the subject of objection in the court below. Even if appropriate and timely objection thereto had been made, we find nothing improper therein. ■ There can be no doubt, however, that the amount of damages awarded by the trial court was grossly excessive.

Respondent and Gould had purchased the Halpern practice for approximately $20.000 at a time when its gross sales were averaging between $48 000 and $60.000 annually. Although respondent's initial modest investment had been returned to him several times over during the years Gould had operated the business for the partnership's benefit, nevertheless, upon dissolution he was entitled either to purchase Gould's share of the business or to receive full compensation for relinquishing his own one-half interest therein to Gould. By his present action seeking damages respondent elected to seek compensation for his interest in the business to the extent that he had been deprived of the full measure thereof by Gould's breach of his fiduciary duty to disclose all the facts concerning the future prospects of the enterprise.

There was no direct evidence tending to show what the true value of the practice would have been on the date of dissolution if the new lease had been included as a partnership asset. Gould testified, without contradiction, that the gross volume of the practice had increased following the dissolution because of arrangements he had made with various labor unions to provide service for their membership at less than standard rates, i.e., the gross volume increased but the percentage of net profit decreased. However, apparently because of appellants' inability to accept the premise that the jury's verdict on the issue of liability might be sustained and made binding upon them, they offered no evidence as to the true worth of the business under the conditions found to be controlling on the issue of damages.

Respondent offered no evidence directly related to the factors recognized as bearing upon the evaluation of the particular business in issue but testified that there were several "rule[s] of thumb in the optometric field as to the purchase price of a going practice." He testified that for practices doing a gross volume in excess of $75,000 per year a fair purchase price would be an amount equal to either (1) the business' annual gross volume, or (2) "somewhere between

forty and fifty per cent of the gross, and then add all of the assets into it, and it comes somewhere near a year's gross, anyway." Using these "rules of thumb," and assuming a gross volume of "$100,000, either $20,000 more or $10,000 less," he opined at the time of trial that the Santa Monica "practice *is* worth at least $100,000." (Italics added.)

Even if it were to be assumed that by this opinion respondent meant that his one-half interest in the partnership that was terminable at will was worth $50,000 as of the date he agreed to accept approximately $11,000 for his interest therein in ignorance of all relevant facts, it is apparent that on the basis of this valuation he would not be entitled to recover more than $39,000 in compensation for the detriment he had sustained.

We have no way of determining, however, whether or not the trier of the fact would have accepted such an opinion of value in the light of the evidence relating to the reason for the increased volume following the dissolution of the partnership, for the trial court determined to adopt an entirely different method for measuring damages. The court's statements on the issue of damages disclose that its award was based upon a computation of the total potential profits of the business throughout the full term of the new lease, including the lessee's option to renew, and awarding respondent one-half this estimated amount to the full extent of his prayer for damages, i.e., $117,000 less the $11,191.13 theretofore received at the time of dissolution.

In an effort to support this award respondent argues that the proper measure of damages to be applied in the instant case is that set forth in Civil Code section 3333 rather than section 3343.[3] This may well be true, but even assuming that in the context of the instant case a different result would be achieved by electing one measure of damages over another,

---

[3]Section 3333: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

Section 3343: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction.

"Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled."

nevertheless by statutory definition[4] no measure of damages may result in an award of compensation beyond the detriment caused by the act of the offending party unless granted in the form of exemplary damages[5] which were expressly denied here.

Since the partnership relationship existing between Gould and respondent was subject to termination at any time, respondent was entitled to be compensated only for the detriment he sustained by reason of having received less than the fair value of his partnership interest.

█ It is true, as respondent observes, that in instances of detriment caused by the breach of a fiduciary obligation arising during a partnership or a joint venture '' [e]*vidence* of profits, both past and present, is admissible to determine the compensation to which [the injured party] is entitled.'' (Italics added.) (*Ellis* v. *Navarro*, 61 Cal.App.2d 755, 760 [143 P.2d 735] ; see also *Elsbach* v. *Mulligan*, 58 Cal.App.2d 354, 367-368 [136 P.2d 651] ; *Caspary* v. *Moore*, 21 Cal.App.2d 694, 699 [70 P.2d 224], and cases cited therein.)

However, from the fact that profits may serve as ''evidence'' in the determination of adequate compensation, it does not follow that the wronged party may recover all future profits, per se, when he had no such right thereto prior to his partner's wrongful act and where the estimated total far exceeds the value of the interest lost by the wrongful act itself. (See *Elsbach* v. *Mulligan, supra,* 58 Cal.App.2d 354, 365, wherein the trial court properly utilized evidence of past and prospective profits to determine the detriment for which compensation should be awarded.)

Under a partnership agreement terminable at the will of either party, respondent never had the right, pragmatically bestowed upon him by the trial court's award of damages, to insist that Gould continue operating the business for respondent's profit for 10 full years without even the possibility of an increase in salary. The fiduciary duty created by the partnership agreement did not encompass such a period of invol-

---

[4]Section 3281: ''Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages.''

Section 3282: ''Detriment is a loss or harm suffered in person or property.''

[5]Section 3294: ''In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.''

untary servitude and it could not be imposed under the guise of compensating respondent for detriment suffered. One may not receive damages for the loss of a right that never existed.

The judgment is reversed and the cause is remanded for a new trial on the issue of damages only.

Fleming, J., and Wright, J., concurred.

Petitions for a rehearing were denied June 13, 1969, and the petitions of the appellant and the respondent for a hearing by the Supreme Court were denied July 16, 1969.